UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/31/18

AMIN DOSHAWN BOOKER,

                                        Plaintiff,

        -against-

THOMAS GRIFFIN, *Superintendent of Green Haven
Facility;* E. DEMO, *DOCCS Investigator*; Paul
Chappius, Jr., *Superintendent Elmira Facility;* G.
KELLER, *Captain at Elmira*; M. KIRKPATRICK,
*Superintendent of Clinton*; John Doe #1, *Confidential
Informant;* JOHN DOES #2–3., *Correction Officers at
Green Haven;* SGT. ISAACS, LT. SCRANTON;
CORRECTION OFFICER SEARS; KAREN
BELLAMY, *Central Office Committee Director*;
DONAL VENNETTOZZI, *Director of SHU,*
                                        Defendants.

No. 16-CV-00072 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Amin Doshawn Booker commenced this *pro se* action pursuant 42 U.S.C. §

1983, alleging, *inter alia*, violations of his First, Eighth, and Fourteenth Amendment rights in

connection with his incarceration at Green Haven and Elmira Correctional Facilities. (*See*

Compl., ECF No. 2.) Specifically, Plaintiff raises various challenges to his placement in

administrative segregation, the suspension of his visitation privileges with his fiancé, and the

denial of appropriate medical care during certain period of his incarceration.

Presently before the Court is Defendants' motion dismiss the Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and to sever and transfer any

remaining claims arising out of Plaintiff's incarceration at Elmira Correctional Facility to the

Western District of New York. (Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Compl.

("Defs.' Mot.") at 1, ECF No. 47.) Additionally, Defendants move under Federal Rule of Civil Procedure 12(b)(1) for this Court refrain from adjudicating Plaintiff's due process claims relating to his administrative segregation, pursuant to the doctrine espoused in *Younger v. Harris*, 401 U.S. 37 (1971). (*Id.*) Plaintiff opposes Defendants' motion and cross-moves for summary judgment on his due process claims. (Pl.'s Mem. Of Law in Opp. to Defs.' Mot. to Dismiss and in Supp. of Cross-Mot. for Summ. J. ("Pl.'s Opp."), ECF No. 52.)

For the reasons that follow, this Court finds abstention under *Younger* unwarranted and GRANTS Defendants' motion to dismiss in part and DENIES it in part. Defendants' motion to sever and transfer certain claims to the Western District of New York is DENIED. Finally, Plaintiff's cross-motion for summary judgment is also DENIED at this juncture.

## BACKGROUND

### I.    Factual Background[1]

### A.  Plaintiff's ILC Activities and the Administrative Segregation Recommendation

Prior to April 22, 2015, Plaintiff was incarcerated at Green Haven Correctional Facility. At Green Haven, Plaintiff served as an active member of the Inmate Liaison Committee ("ILC"), a group dedicated to recording and addressing inmates' concerns and grievances within the facility. (Compl. ¶ 18–21.) In March 2015, the ILC requested a meeting with the Department of Corrections and Community Supervision ("DOCCS") Commissioner Anthony Annucci to

---

[1] The following facts are primarily derived from the Complaint, and are assumed as true for the purposes of Defendants' motion to dismiss. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

address inmate complaints of inappropriate staff behavior and rumors that Defendant Griffin, a superintendent at the facility, was instructing other officers to harm inmates. (*Id.* ¶¶ 22–23.) Once Defendant Griffin became aware of the ILC's request, he confronted Plaintiff, telling him: "I run things here, you don't question my authority." (*Id.* ¶ 31.) Defendant Griffin further threatened to send Plaintiff to a facility in upstate New York, away from his family, and warned that he could have Plaintiff in the special housing unit ("SHU")[2] "with a push of a button," adding that Plaintiff would "never get out." (*Id.* ¶ 33.)

The next day, on April 22, 2015, Plaintiff was abruptly transferred to Elmira Correctional Facility. (*Id.* ¶¶ 35–38.) Shortly thereafter, Plaintiff was served with an administrative segregation recommendation, authored by Defendant Demo in conjunction with Defendant Griffin, accusing Plaintiff of attempting to organize an inmate demonstration and being influential within the Blood organization. (*Id.* ¶¶ 52–54.)

**B. The Administrative Segregation Hearing**

On May 1, 2015, the Deputy Superintendent of Elmira Correctional Facility, Defendant Kirkpatrick, commenced an administrative segregation hearing against Plaintiff. (*Id.* ¶ 55.) After Plaintiff objected to the recommendation drafted by Defendant Demo and Defendant Griffin, both Defendants testified via telephone on May 7, 2015 and May 12, 2015, respectively. (*Id.* ¶ 56.) The testimony of each Defendant was inconsistent with Defendants' written recommendation, prompting Plaintiff to request an adjournment of the hearing in order to obtain documents and interview witnesses. (*Id.* ¶ 58.)

On June 4, 2015, Plaintiff alleges he was "lured" by Defendant Scranton, a Lieutenant at

---

[2] SHU confinement encompasses segregation for disciplinary, detention, protective, or administrative purposes. *See* 7 NYCRR § 301.2– 301.4. Accordingly, this Court uses the terms "administrative segregation" and "SHU confinement" interchangeably throughout this Opinion.

Elmira Correctional Facility, to a room with a telephone. (*Id.* ¶ 64.) Defendant Scranton dialed a number, asked for a "Commissioner Gore," and handed the receiver to Plaintiff. (*Id.*) The individual on the phone identified himself as "Commissioner Gore" and asked Plaintiff about his grievances against Defendant Griffin. (*Id.* ¶ 65.) Specifically, the individual sought information regarding who had informed Plaintiff that Defendant Griffin was authorizing officer assaults on inmates as well as information regarding Plaintiff's administrative segregation hearing. (*Id.* ¶ 66.) Plaintiff then discussed his grievances relating to the administrative hearing with the individual he believed to be "Commissioner Gore." (*Id.* ¶ 67.) Plaintiff later wrote to Commissioner Gore in Albany and learned that he had not actually spoken to Commissioner Gore over the phone. (*Id.*)

While the administrative segregation hearing was adjourned, Defendant Kirkpatrick was transferred to another DOCCS facility. (*Id.* ¶ 68.) The hearing was eventually reconvened on July 7, 2015, with Defendant Keller as the new hearing officer. (*Id.* ¶ 69.) The testimony given at the hearings before Defendant Kirkpatrick was thrown out. (*Id.*) Defendant Keller denied Plaintiff's request for documents, did not allow Plaintiff to question witnesses, and relied on the testimony of a confidential source, without making an independent assessment of the source's reliability. (*Id.* ¶ 70–73.) Defendants Griffin and Demo, who again testified at the hearing, provided testimony that was significantly different than their previous statements before Defendant Kirkpatrick. (*Id.* ¶ 69.) Defendant Keller eventually reached a disposition on August 21, 2015, agreeing with Defendant Demo's recommendation and sentencing Plaintiff to indefinite administrative segregation. (*Id.* ¶ 74.) Defendant Keller's determination was not based on any reliable evidence. (*Id.*)

Plaintiff repeatedly voiced his concern about possible due process violations in his

segregation hearing to Defendant Chappius, a Superintendent at Elmira. (*Id.* ¶ 82.) Defendant Chappius, however, did not address Plaintiff's concerns, telling him: "I am going with Griffin, whatever he wants. . . I am not reversing the determination. These are your problems, I sleep well at night." (*Id.* ¶ 82.) Plaintiff then appealed the disposition of his administrative hearing to the DOCCS Director of Special Housing, Defendant Venettozzi, who affirmed the disposition on November 6, 2015. (*Id.* ¶ 83.)

### C.  Transfer of Plaintiff's Medical Records

After Plaintiff was transferred from Green Haven Correctional Facility to Elmira, Defendants failed to ensure the transfer of his medical records. (*Id.* ¶ 99–103.) Indeed, Plaintiff's medical records were not transferred until August 12, 2015. (*Id.* ¶ 99, 103.) Because he could not receive medical attention until his new facility acquired his records, Plaintiff's various ailments were left completely untreated for nearly three months (*Id.* ¶ 101–03.) During that time, Plaintiff suffered severe swollen glands, swollen eyes, nasal congestion, sneezing, nosebleeds, nose sores, blisters, and severe constipation as a result of his untreated allergies. (*Id.*) Moreover, Plaintiff began to experience dental complications, which also went untreated, leading to the deterioration and eventual dislodgement of one of his teeth. (*Id.*)

### D.  Plaintiff's Incarceration at Elmira Correctional Facility

On May 29, 2015, Defendant Sears, a corrections officer at Elmira, confiscated and read Plaintiff's incoming legal mail. (*Id.* ¶ 105.) Plaintiff immediately notified the area sergeant and a lieutenant of Defendant Sears's actions. (*Id.*) Defendant Sears then threatened plaintiff, saying "I'm going to fix you Booker, you wanna be an ass-hole and cry to brass?" (*Id.*)

The next day, Defendant Sears and Sergeant Isaacs terminated Plaintiff's visit with his fiancé without any explanation. (*Id.* ¶ 106.) Subsequently, on June 1, 2015, Defendant Chappius

sent Plaintiff a notice of a one-year termination of his fiancés visitation privileges. (*Id.* ¶ 107.) The notice falsely alleged that Plaintiff's fiancé had exposed her genitals to him on May 29, 2015. (*Id.*) Sometime after, Defendants Isaacs and Sears taunted plaintiff, saying "You don't cry to lieutenant around here, this is our house here, my officer was going to give your papers when he was good [and] ready, but since you wanna be an asshole, you have to feel the heat." (*Id.* ¶ 108.) Defendant Sears further threatened that if Plaintiff tried to go over his head again, he would lose all of his visiting privileges. (*Id.*)

## II. Procedural Background

Plaintiff commenced the present action pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, various violations of his First, Eighth, and Fourteenth Amendment rights by officials at Green Haven Correctional Facility and Elmira Correctional Facility. Defendants filed a motion to dismiss Plaintiff's Complaint on January 06, 2017, arguing that the Court lacked jurisdiction to adjudicate Plaintiff's due process claims pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and that Plaintiff had failed to state a claim for any other constitutional violation. (ECF No. 46.) Plaintiff opposed Defendants' motion to dismiss and filed a cross-motion for summary judgment on his due process claims. (ECF No. 52.) The Court now considers the parties' arguments in turn.

## DEFENDANTS' MOTION TO DISMISS[3]

---

[3] Defendants originally moved to dismiss the Complaint pursuant to 12(b)(1) for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim. (Defs.' Mot. at 1.) In the alternative, Defendants request that the Court convert their motion to one for summary judgment. (Defs.' Mem. of Law in Further Supp. of Mot. to Dismiss, or in the Alt., for Summ. J. ("Defs.' Reply") at 25, ECF No. 55.) However, the Second Circuit has cautioned that "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000). Where, as here, a *pro se* plaintiff alleges violations of his constitutional rights, the Court is especially hesitant to accelerate the litigation to summary judgment prior to providing him an

## I.    Applicable Legal Standards

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. In considering a 12(b)(6) motion, the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (internal quotation marks omitted). Nor must the Court credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *Kleinman v. Elan Corp., plc*. 706 F.3d 145, 152 (2d Cir. 2013).

---

opportunity to conduct discovery. Accordingly, Defendants' request for conversion of this motion to one for summary judgment is denied.

As to a motion brought under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "[T]he court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). Though a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, [it] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

Finally, "where, as here, a plaintiff proceeds *pro se*, the court must 'construe [] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s].' " *Askew v. Lindsey*, No. 15-CV-7496 (KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (alterations in original) (citing *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)). Yet, "'the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law.'" *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

## II.    Discussion

### A.  Younger Abstention

Defendants first contend that, under *Younger v. Harris*, 401 U.S. 37 (1971), the Court should abstain from exercising jurisdiction over Plaintiff's due process claims for injunctive and declaratory relief relating to his administrative segregation and stay his claims for monetary damages. This Court disagrees.

### i. Applicable law

Under the *Younger* abstention doctrine, "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. New York State Comm'n on Judicial* Conduct, 351 F.3d 65, 74 (2d Cir. 2003). This doctrine of federal abstention "is grounded in principles of comity and federalism and is premised on the belief that a state proceeding provides a sufficient forum for federal constitutional claims." *Jordan v. Bailey*, 570 F. App'x 42, 44 (2d Cir. 2014) (summary order) (internal quotation marks omitted) (quoting *Schlanger v. Phillips*, 166 F.3d 439, 442 (2d Cir. 1999)).

However, "abstention is generally disfavored, and federal courts have virtually unflagging obligation to exercise their jurisdiction." *Niagra Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (internal quotation marks omitted); *see also Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591(2013) ("Jurisdiction existing, this Court has cautioned, a federal court's obligation to hear and decide a case is virtually unflagging." (internal quotation marks omitted)). Thus, "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989).

Indeed, the Supreme Court has recently reiterated *Younger*'s narrow scope, cautioning that abstention is only warranted for three kinds of state proceedings: "(1) pending state criminal proceedings; (2) civil enforcement proceedings that are akin to criminal prosecutions; and (3)

civil proceedings that implicate a State's interest in enforcing the orders and judgments of its

courts." *Schorr v. DoPico*, 686 F. App'x 34, 36 (2d Cir. 2017) (summ. order) (internal quotation

marks omitted) (quoting *Sprint*, 134 S. Ct. at 588, 591). In addition, courts may also consider

other, non-dispositive, factors such as whether the ongoing state proceeding "implicates

important state interests," and whether "it provide[s] an adequate opportunity to raise [federal]

challenges." *Sprint*, 134 S. Ct. at 593.

      **ii.**     **Analysis**

      Here, Defendants contend that this Court should abstain from hearing Plaintiff's due

process claims to avoid interfering with the Article 78 proceeding[4] pending in New York state

court. Plaintiff commenced that proceeding to challenge the administrative segregation hearing

that resulted in his continuous and indefinite confinement in the SHU. (*See* Decl. of Yan Fu in

Supp. of Defs.' Mot. to Dismiss ("Fu Decl.") at ¶¶ 2–3, Ex. A, Ex. B.)

      Plaintiff's Article 78 proceeding, however, fails to satisfy any of the "exceptional

circumstances" that warrant abstention; it is clearly neither a criminal proceeding, nor a

proceeding implicating the State's interest in enforcing the orders and judgments of its courts.

Moreover, the Article 78 proceeding does not constitute a civil enforcement proceeding akin to a

criminal prosecution. Indeed, the Second Circuit has explained that civil enforcement

proceedings are akin to criminal prosecutions only when (1) "they are initiated to sanction the

federal plaintiff for some wrongful act"; (2) a state actor is a party and often initiates the action,

and (3) investigations are involved and result in the filing of formal complaint or charges. *Neroni*

---

[4] Generally, "Article 78 of the New York Civil Practice Law and Rules contains a complex of
procedures that permit a civil litigant to challenge judicial or administrative action by way of
certiorari, mandamus, and prohibition." *Jones v. Cty. of Westchester*, No. 14-CV-7635 (NSR),
2016 WL 1023322, at *2 (S.D.N.Y. Mar. 8, 2016) (internal quotation marks omitted).

*v. Becker*, 595 F. App'x 94, 95 (2d Cir. 2015) (summ. order) (internal quotation marks omitted). None of those characteristics are satisfied by the Article 78 proceeding presently at issue.

First, the Article 78 hearing was commenced by Plaintiff—not any state actor. Further, the hearing is intended to protect Plaintiff's rights rather than sanction him in any way. Although state actors are parties to the suit, they were not the initiating parties, nor were there investigations that culminated in the filing of a formal complaint in this suit. The Article 78 hearing, alone, clearly does not warrant *Younger* abstention. The only remaining question, then, is whether the underlying administrative segregation hearing warrants abstention until the state review process—including Plaintiff's Article 78 hearing—has concluded.

As an initial matter, the underlying segregation hearing could ostensibly fall under the second *Younger* category. Indeed, the proceeding is akin to a criminal prosecution in a number of ways: it was both initiated by state actors and involves some form of investigation that ultimately results in a segregation recommendation. (*See* Compl. ¶¶ 52–54.) However, while *Younger* has been expanded "beyond criminal proceedings, and even beyond proceedings in courts," it does not apply to "proceedings that are not 'judicial in nature.'" *New Orleans Pub. Serv., Inc.*, 491 U.S. at 370. While the Supreme Court has recognized that prison officials do, in a sense, perform "an adjudicatory function" during prison disciplinary hearings—in that they determine whether the accused inmate is guilty of the charged leveled against him, hear testimony and receive documentary evidence, evaluate credibility and weigh evidence, and render a decision— their function is not a "classic adjudicatory one." *Cleavinger v. Saxner*, 474 U.S. 193, 203 (1985). Rather, as the Supreme Court has explained, prison disciplinary officials:

> unlike a federal or state judge, are not 'independent' . . . . They are not professional hearing officers, as are administrative law judges. They are, instead, prison officials . . . diverted from their usual duties. . . . They work with the fellow employee who lodges the charge against the inmate upon whom they sit in judgment. The

> credibility determination they make often is one between a co-worker and an inmate
> They are under obvious pressure to resolve a disciplinary dispute in favor of
> the institution and their fellow employee. It is the old situational problem of the
> relationship between the keeper and the kept, a relationship that hardly is conducive
> to a truly adjudicatory performance.

*Id.* 203–04. Moreover, prisoners facing administrative segregation have no lawyer or independent representative, no right to compel witnesses' attendance or to cross-examine, and no absolute right to be present at the hearing. *See* 7 NYCRR §§ 254, 301.4. Under such circumstances, the concerns of comity animating the *Younger* doctrine are less compelling and are better addressed through the Prison Litigation Reform Act's requirement for exhaustion of administrative remedies. *See Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 122 n.5 (1981) (recognizing that "[t]he doctrine of exhaustion of administrative remedies, while based primarily on concerns of judicial administration, and which reflects principles of avoidance of unnecessary litigation, deference to administrative expertise, and notions of administrative autonomy, is surely broad enough to encompass comity concerns as well" (internal citations and quotation marks omitted)).

Even assuming the administrative segregation hearing is the sort of proceeding entitled to *Younger* treatment, the inquiry does not end there. Abstention would only be appropriate if this Court *also* found that the hearing and Plaintiff's subsequent Article 78 challenge constitute a "unitary process that should not be disrupted, [such that] that federal intervention is no more permitted at the conclusion of the [hearing] than during it." *New Orleans Pub. Serv., Inc.*, 491 U.S. at 369. Defendants have failed to advance a single argument why the Court should make this finding. The Court need not linger on this unsettled question, however, because it decides the issue of *Younger* abstention on different grounds.

Ultimately, this Court finds abstention inappropriate in the present action for two primary

reasons. First, it is not clear from the record whether Plaintiff's Article 78 proceeding is actually

pending in state court. Although Plaintiff admits he initiated such a proceeding, he has submitted

letters from the state court reflecting that as of July 7, 2017, his appeal had remained unperfected

and the deadline by which he was directed to perfect the proceeding had passed. (Pl.'s July 17th,

2017 Letter, Attachment C, Letter from Second Judicial Department, ECF No. 79.) While it

remains unclear whether the action has actually been dismissed for failure to prosecute, Plaintiff

has represented that he never substantively pursued the Article 78 proceeding.[5] Thus, nothing

has actually been litigated, nor does it appear that the issues will ever be litigated, in the state

court. (*Id.*) The comity and federalism concerns of the *Younger* doctrine are inapplicable where,

as here, there is no risk of actually interfering with a state action that is, at best, pending only in

name and not in substance.

Second, the Second Circuit has cautioned that abstention is generally inappropriate

where, as here, a litigant seeks money damages for constitutional violations. *See Kirschner v.

Klemons*, 225 F.3d 227, 238 (2d Cir. 2000). In such cases, "it is less likely that unacceptable

interference with the ongoing state proceeding, the evil against which *Younger* seeks to guard,

would result from the federal court's exercise of jurisdiction." *Id.*

Although a federal court may nevertheless stay a plaintiff's claims for monetary damages

pending the resolution of the state court proceeding, *see Giulini v.Blessing*, 654 F.2d 189, 193

(2d Cir. 1981), a stay is not presently warranted.  Generally, courts will impose such stays

---

[5] Moreover, while a state proceeding remains pending for the purposes of *Younger* until all state
appellate remedies have been exhausted, "it is far from settled that an Article 78 proceeding is
even required to exhaust all appellate remedies." *Chalasani v. Daines*, No. 10-CV-1978 (RRM)
(RML), 2011 WL 4465408, at *2 (E.D.N.Y. Sept. 26, 2011); *see also Coastal Distribution, LLC
v. Town of Babylon*, 216 F. App'x 97, 102 (2d Cir. 2007) (recognizing that there is "no support
to the proposition that the availability of an Article 78 action *after* the completion of state
administrative proceedings renders them ongoing perpetually.").

"with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views." *Id.* However, because it appears the underlying state proceeding has either been dismissed or, at the very least, is not being actively litigated, such considerations are inapplicable here. Indeed, this Court refuses to indefinitely stay Plaintiff's present claims in favor of a state action that may never actually reach resolution.

As it currently stands, therefore, this Court finds no reason to delay addressing Plaintiff's due process allegations. *See Chittenden v. Connors*, 460 F. Supp. 2d 463, 468 (S.D.N.Y. 2006) (recognizing that "[a]bstention is a narrow exception to the generally broad duty on the part of federal courts to exercise jurisdiction," and is therefore "the exception, not the rule"); *Homere v. Inc. Vill. of Hempstead*, No. 17-CV-3173 (JFB) (AKT), 2018 WL 679408, at *6 (E.D.N.Y. Feb. 1, 2018) (same). Accordingly, Defendants request to stay Plaintiff's due process claims is denied.

### B. Due Process Claims—Administrative Segregation Hearing

Plaintiff contends that he was not afforded proper process before being subjected to indefinite administrative segregation, in violation of his Fourteenth Amendment due process rights. Defendants argue, however, that Plaintiff has failed to adequately state a claim for due process violations. This Court disagrees.

### i. Applicable law

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To state a procedural due process claim, Plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

With regard to the first prong, a prisoner's liberty interest may be implicated by SHU confinement "only if the discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2006). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed. . ." *Id.* (internal quotation marks omitted). Although the Second Circuit has declined to establish bright-line rules in this area, it has "previously determined confinement in even "normal" SHU conditions for 305 days constitutes "a sufficient departure from the ordinary incidents of prison life" to suggest a protected liberty interest. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000).

"Once an inmate demonstrates a liberty interest in avoiding segregated confinement, he or she must also show that assignment to such confinement occurred without due process of law." *Hamilton v. Deputy Waren*, No. 15-CV-4031 (KBF), 2016 WL 6068196, at *7 (S.D.N.Y. Oct. 13, 2016). What process is due, however, depends on the type and purpose of segregation—the procedural protections that must be afforded when the confinement is for "disciplinary" reasons are distinct from those required when the confinement serves "administrative" purposes. *Id.*; *see also Wheeler-Whichard v. Roach*, 468 F. App'x 28, 30 (2d Cir. 2012) (summ. order) (outlining the distinct procedural due process standards for disciplinary versus administrative segregation).

An inmate facing disciplinary confinement is "entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary action taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). "In addition, the disciplinary ruling must be

supported by 'some reliable evidence.'" *Smith v. Arnone*, 700 F. App'x 55, 56 (2d Cir. 2017) (summ. order) (quoting *Sira*, 380 F.3d at 69).

These same procedural protections, however, do not extend to inmates facing administrative segregation. Instead, assignment to administrative segregation requires only "some notice of the charges against [the inmate] and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Taylor v. Rodriguez*, 238 F.3d 188, 192 (2d Cir. 2001) (internal quotation marks omitted) (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)).

### ii. Liberty Interest and Process Due

Defendants do not appear to contest that Plaintiff's prolonged administrative segregation—which has extended, according to Plaintiff, longer than 485 days (Pl.'s Opp. at 29)—implicates a protected liberty interest. [6] (Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Reply") at 9–10.) Rather, Defendants argue that even if Plaintiff has a protected liberty interest, he fails to show the inadequacy of the process he was provided. (Def.'s Reply at 9–16.) This Court disagrees.

As a preliminary matter, Plaintiff alleges that while his SHU confinement was labeled administrative, it was actually punitive in nature, triggering the more stringent due process requirements. (Compl. ¶ 52, 88.) As the Second Circuit has recognized, when a defendant acts in "bad faith, labeling as administrative a confinement that could only be justified as punitive," greater procedural protections may apply. *Sealey v. Glitner*, 116 F.3d 47, 52–53 (2d Cir. 1997). Here, Plaintiff has pled sufficient facts to plausibly support an inference that Defendants acted in

---

[6] Because the Court finds that Plaintiff has a protected liberty interest based on the length of his administrative segregation, the Court does not reach the question of whether the particular conditions of Plaintiff's SHU confinement imposed any atypical and significant hardship.

bad faith when characterizing Plaintiff's segregation as administrative rather than punitive.

First, Plaintiff alleges that Defendants Griffin and Demo—the prison officials who developed and authored the segregation recommendation—targeted him for SHU confinement in retaliation for his activity on the ILC (Compl. ¶¶ 22–33, 52, 80.) Specifically, Plaintiff contends that after he attempted to grieve Defendant Griffin's violent behavior towards inmates directly to DOCCS Commissioner Annucci, Defendant Griffin threatened to have him "in [the] SHU with a push of a button." (*Id.*) Plaintiff was served with the administrative segregation recommendation shortly thereafter. (*Id.* ¶ 54.)

Secondly, the conduct attributed to Plaintiff in the segregation recommendation—including organizing a prison demonstration with other inmates and engaging in gang activity—are violative of the DOCCS standards of inmate behavior. *See* 7 NYCRR 270.2(B)(5)(iii) ("An inmate shall not lead, organize, participate, or urge other inmates to participate, in a work-stoppage, sit-in, lock-in, or other actions which may be detrimental to the order of [the] facility."); 7 NYCRR 270.2(B)(6)(iv) ("An inmate shall not engage in or encourage others to engage in gang activities . . . ."). As the DOCCS directives state, "[v]iolation of any of the rules will result in appropriate *disciplinary action*." *Id.*

The DOCCS regulation's admonition that such conduct will result in *disciplinary*—rather than administrative—action, coupled with the alleged ill-will between Plaintiff and the prison officials who issued the administrative segregation recommendation, suffice to plausibly allege Defendants' bad faith mislabeling of Plaintiff's confinement as administrative. Thus, drawing all reasonable inferences in Plaintiff's favor, as it must at this juncture, this Court finds that Plaintiff may be entitled to stricter due process protections.

Assuming that the more stringent standard applies, Plaintiff has stated a procedural due

process claim. Plaintiff alleges that: (1) he did not receive adequate notice of the charges against him, (2) he was denied a reasonable opportunity to call witnesses and present documentary evidence, and (3) that the ruling was not supported by reliable evidence. (Compl. ¶ 70.)

With regard to his first claim, Plaintiff admits that he received the segregation recommendation in advance of his hearing. (Compl. ¶ 53–54.) The recommendation, which was incorporated to the Complaint by reference, includes details regarding the basis for Plaintiff's proposed SHU confinement—including his past gang-related activity, his alleged concession to Defendant Griffin that he carried significant influence and authority in the Blood organization, and his history for organizing prison demonstrations. However, the activity with which Plaintiff was presently being charged[7]—organizing an impending demonstration against the Green Haven Administration—is not outlined with any specificity. The Second Circuit has, in the past, found similar notices insufficient to satisfy due process requirements. *See Sira*, 380 F.3d at 71 (finding notice insufficient where it did not indicate the words or actions employed by plaintiff in purportedly urging, organizing, or threatening inmates to participate in a strike); *Taylor v. Rodriguez*, 238 F.3d 188, 192 (2d Cir. 2001) (rejecting as "vague" and "conclusory" a notice that contained no specific allegations of conduct indicating *current* gang involvement).

Plaintiff additionally alleges that Defendant Keller did not allow him to call any witnesses or

---

[7] The Court notes that Defendants contend the recommendation does not charge any particular misconduct, but rather, provides Plaintiff's history to demonstrate that he poses a threat to the safety and security of the correctional facility. (Def.'s Reply at .) However, as this Court has already discussed, Plaintiff has provided sufficient facts to plausibly allege that the hearing may have been punitive rather than administrative in nature. Further, it appears that Plaintiff's alleged actions in planning the prison demonstration may have been the motivating factor in initiating the administrative segregation, as many of the other alleged bases occurred *years* before Plaintiff was placed in segregation. As such, construing Plaintiff's Complaint liberally and drawing all reasonable inferences in his favor, the Court finds that Plaintiff plausibly alleges that his administrative segregation was a disciplinary response to his alleged inmate organization efforts.

present any documentary evidence in his defense. (Compl. ¶ 70.) Assuming Plaintiff is in fact entitled to the more stringent due process protections associated with disciplinary proceedings, such allegations can form the basis of a due process claim.

Finally, Plaintiff also plausibly alleges that the ruling was not supported by reliable evidence. The Supreme Court has recognized that "prison discipline decisions affecting an inmate's liberty interest cannot be imposed arbitrarily [and] must be supported by some evidence in the record." *Sira*, 380 F.3d at 76 (internal quotation marks omitted). Judicial review of this "some evidence" standard, however, is narrowly focused. *Id.* "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the [decisionmaker]." *Id.* (internal quotation marks omitted). Because only *reliable* evidence can satisfy the "some evidence" requirement, where a confidential information is involved, a hearing officer must conduct "an independent assessment of informant credibility." *Id.* at 78.

Here, Plaintiff has alleged that Defendants relied on a confidential informant in reaching their conclusion, but failed to engage in any independent assessment of that informant's credibility. (Compl. ¶ 73.) Such allegations, taken as true, could support yet another procedural due process violation.

Accordingly, Defendants' request to dismiss Plaintiff's due process claims pursuant to Rule 12(b)(6) is denied.

### iii.    Claims against particular Defendants

Defendants nonetheless contend that even if Plaintiff has stated a viable due process claim, those claims against Defendants Venettozzi, Griffin, and Demo must be dismissed. Specifically, Defendants maintain that Plaintiff has failed to adequately plead the personal involvement of Defendant Venettozzi, who is the DOCCS Director of Special Housing and Inmate Disciplinary

Programs. Defendants further argue that even if this Court finds he was personally involved in the underlying violations, Defendant Venettozzi is entitled to qualified immunity—as are Defendants Griffin and Demo. The Court considers each argument in turn.

### a. Defendant Venettozzi

Although Defendant Venettozzi enjoys a supervisory role as the DOCCS Director of Special Housing and Inmate Disciplinary Programs, "a defendant in a §1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Instead, "a plaintiff must establish a given defendant's *personal involvement* in the claimed violation in order to hold that defendant liable in his individual capacity." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir.) (emphasis added) (internal quotation marks omitted), *cert. denied sub nom. Brooks v. Pataki*, 137 S. Ct. 380 (2016). As the Second Circuit has explained, the personal involvement of a supervisory defendant may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Courts in this Circuit, however, are "divided as to whether the five categories announced in *Colon* may still be used as the bases for liability under § 1983" following the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Allah v. Annucci*, No. 16-CV-1841 (KMK), 2017 WL 3972517 at *6 (S.D.N.Y. Sept. 07, 2017). In *Iqbal*, the Supreme Court held

that "[b]ecause vicarious liability is inapplicable to . . . §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676 (2009). In so holding, the Court explicitly rejected the argument that, "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Id.* at 677. The Court noted however, that the factors necessary to establish a § 1983 claim "will vary with the constitutional provision at issue." *Id.* at 676.

The Second Circuit has not squarely addressed how *Iqbal*, which "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," affects the standards in *Colon* for establishing liability. *Allah,* 2017 WL 3972517 at *6 (internal quotation marks and citations omitted); *see also Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) ("*Iqbal* has, of course, engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon v. Coughlin*." (internal citation omitted)). Overall, however, "[t]he majority of the district courts . . . have held that, absent any contrary directive for the Second Circuit, all five *Colon* factors survive where the constitutional violation at issue does not require a showing of discriminatory intent." *Allah*, 2017 WL 3972517 at *6 (internal quotation marks omitted) (collecting cases) (quoting *El-Hanafi v. United States*, No, 13-CV-2072, 2015 WL 72804, at *13 (S.D.N.Y. Jan. 6, 2015)). This Court has already expressed its agreement with that proposition, and will apply it with equal force here. *See Marshall v. Annuci*, No. 16-CV-8622 (NSR), 2018 WL 1449522, at *9 (S.D.N.Y. Mar. 22, 2018); *Matteo v. Perez*, No. 16-CV-1837 (NSR), 2017 WL 4217142, at *5 (S.D.N.Y. Sept. 19, 2017).

Because Plaintiff's procedural due process claim against Defendant Venettozzi does not require a showing of discriminatory intent, the Court will apply all five *Colon* factors. *See Marom v. City of New York*, No. 15-CV-201 (PKC), 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016), *partially reconsidered on separate grounds*, No. 15-CV-2017 (PKC), 2016 WL 5900217 (S.D.N.Y. July 29, 2016) (recognizing that *Iqbal* only requires that a supervisor's action— whether direct or through 'his or her superintendent responsibilities'—must itself violate the terms of the constitutional provision at issue.").

Here, Plaintiff sufficiently alleges the personal involvement of Defendant Venettozzi under the second *Colon* factor. Plaintiff alleges that he submitted an appeal to Defendant Venettozzi, who is the DOCCS Director of Special Housing and Inmate Disciplinary Programs. (Compl. ¶ 83.) As the Director of Special Housing, Defendant Venettozzi ostensibly had the ability to remedy the ongoing wrong Plaintiff complained of—his placement in administrative segregation without due process of law. Plaintiff contends that despite being made aware of the alleged due process violations, Defendant Venettozzi affirmed his placement in segregation. Such actions fall squarely within the second category of *Colon*, which recognizes that a defendant is sufficiently involved where, after being informed of an ongoing constitutional violation through a report of appeal, he or she fails to remedy the wrong. *See 58* F.3d at 873.

Having found that the Complaint sufficiently alleges his personal involvement in the deprivation of Plaintiff's constitutional rights, the Court must now consider whether Defendant Venettozzi is nonetheless immune from liability. The Court finds that he is.

The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011)). Thus, "qualified immunity

shields both state and federal officials from suit unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (internal quotation marks omitted). For the purposes of this analysis, "a right is clearly established when its contours are sufficiently clear that at the time of the challenged conduct, every reasonable official would have understood that what he was doing violates that right." *Crawford v. Cuomo*, No. 16-CV-3466, 2018 WL 542578, at *1 (2d Cir. Jan 25, 2018) (summ. order)(internal quotation marks and citations omitted).

Because, "courts in this circuit disagree over whether the failure to remedy a wrong after being informed of a constitutional violation through a report or appeal remains sufficient to establish a supervisor's personal involvement in a constitutional violation," *Richardson v. Williams*, No. 15-CV-4117 (VB), 2016 WL 5818608, at *3 (S.D.N.Y. Oct. 5, 2016), a reasonable official in Defendant Venettozzi's position could have been unaware that denying Plaintiff's appeal would be unlawful. Accordingly, Defendant Venettozzi is immune from suit in his individual capacity. *See Richardson*, 2016 WL 5818608, at *3 (granting qualified immunity to a defendant who affirmed the result of a prison disciplinary proceeding because at the time of the appeal, it would not necessarily be clear to a reasonable government official that his conduct was unlawful in the situation confronted).

### b. Defendants Griffin and Demo

Defendants also contend that Defendants Griffin and Demo are similarly entitled to qualified immunity against the claims that they fabricated charges against Plaintiff, leading to his placement in administrative segregation. This Court agrees.

As the Second Circuit has recognized, "[i]t is well-settled that a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which

may result in the deprivation of a protected liberty interest." *Velez v. Burge*, 483 F. App'x 626, 628 (2d Cir. 2012). Thus, no reasonable officer in Defendants' position would understand that creating a misleading segregation recommendation, alone, would be independently violative of Plaintiff's due process rights. Accordingly, to the extent that Plaintiff is asserting an *independent* due process claim based solely on Defendants' allegedly fabricated charges, Defendant Griffin and Demo are entitled to qualified immunity.[8]

## C. First Amendment Retaliation

Plaintiff claims that Defendants Griffin and Demo removed him for his position on the Green Haven Inmate Liaison Committee ("ILC"), transferred him to Elmira Correctional Facility, initiated an administrative segregation proceeding, and falsely testified at the proceeding, all in retaliation for Plaintiff's actions as a member of the ILC. (Compl. ¶¶ 18–40.)

"To state a First Amendment retaliation claim sufficient to withstand a motion to dismiss, a plaintiff must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)).

Here, Defendants do not contest that Plaintiff has validly stated a First Amendment retaliation claim. Instead, Defendants argue that even if Plaintiff has adequately pled a

---

[8] The Court notes, however, that the alleged fabrication of charges by Defendants Griffin and Demo may nonetheless be relevant to Plaintiff's broader due process claims and First Amendment retaliation claim. *See Wiley v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (noting that there are exceptions to the rule that a prison inmate has no constitutionally guaranteed immunity from being wrongly accused of conduct, including "when an inmate is able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right.").

cognizable claim against them, they are nevertheless entitled to qualified immunity. (Defs.' Mot. at 11–12.). This Court disagrees.

As previously discussed, qualified immunity shields both state and federal officials from suit unless they violate a clearly established constitutional or statutory right. *See Terebesi,* 764 F.3d at 230 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [government] official that his conduct was unlawful in the situation he confronted." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2009).

Here, Defendants contend that the Second Circuit did not specifically hold that a prisoner engages in constitutionally protected conduct when carrying out his duties as a member of an ILC until its ruling in *Dolan v. Connolly*, 794 F.3d 290 (2015), in July of 2015. (*Id.*) Accordingly, Defendants argue that in April of 2015—when they allegedly engaged in the conduct at issue—it was not clearly established that retaliating against Plaintiff's ILC activities would violate his First Amendment rights. (Defs.' Mot. at 12.)

Defendants, however, take an unduly myopic view of Plaintiff's constitutional rights. The Second Circuit has long recognized that "retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments." *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). Further, the Second Circuit held as early as July 1996—nearly a full decade before Defendants' allegedly retaliatory actions—that a prisoner's "leadership" in filing a broad grievance that affected many inmates, and attempts to identify other possible grievants "clearly" implicated "a protected right of redress under the First and Fourteenth Amendments." *Graham*, 89 F.3d at 80. Such actions are largely indistinguishable from Plaintiff's role as an ILC member. Thus, there is no question that

Plaintiff's rights were clearly established at the time of Defendants' alleged retaliation. Accordingly, this Court finds that Defendants Griffin and Demo are not entitled to qualified immunity for Plaintiff's First Amendment retaliation claims.

### D. Ex Post Facto Clause

Defendants next contend that Plaintiff fails to adequately allege a violation of the Ex Post Facto Clause. (Defs.' Mot. at 12.) This Court agrees.

The Ex Post Facto Clause prohibits laws that (1) retroactively alter the definition of crimes, (2) make more burdensome the punishment of a crime after its commission, or (3) deprive one charged with a crime of any defenses available according to law at the time when the crime was committed. *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001). "A criminal or penal law is ex post facto when it is: (1) retrospective, and (2) more onerous than the law in effect on the date of the offense." *United States v. Ramirez*, 846 F.3d 615, 619 (2d Cir.), *cert denied*, 137 S. Ct. 2253 (2017).

Here, Plaintiff fails to identify any particular law, directive, or regulation that was applied retroactively and was more onerous than its predecessor. Indeed, Plaintiff merely alleges that Defendants Griffin and Demo were allowed to change their testimony and that the administrative segregation hearing was "untimely" and "not meaningful." (Compl. ¶¶ 69–71.) Such allegations, while perhaps indicative of due process violations, do not fall under the ambit of the Ex Post Facto Clause. Plaintiff's claim for violations the Ex Post Facto Clause are, therefore, dismissed.

### E. Double Jeopardy

The Court similarly grants Defendants' motion to dismiss Plaintiff's double jeopardy claims. Plaintiff contends that Defendants Chappius, Keller, Demo, and Griffin "subject[ed] him to double jeopardy" by considering previous disciplinary violations and charges for which he had

already received punishment or of which he was previously exonerated. (Compl. ¶¶ 73–83.)

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. This provision, "*inter alia*, protects against multiple punishments for the same offense." *United States v. Polouizzi*, 564 F.3d 142, 154 (2d Cir. 2009) (internal quotation marks omitted). However, this protection extends only to "the imposition of multiple *criminal* punishments." *Porter v. Coughlin*, 421 F.3d 141, 145 (2d Cir. 2005) (emphasis in original) (internal quotation marks omitted).

As the Second Circuit recognized in *Porter v. Coughlin*, because prison disciplinary proceedings serve a legitimate "nonpunitive purpose—namely, maintaining institutional order"—they are civil rather than criminal in nature and, thus, do not implicate double jeopardy concerns. *Id.* at 147. While Plaintiff advocates for a narrow interpretation of *Porter*—limiting it only to the particular type of disciplinary proceeding at issue in that case—courts in this Circuit have interpreted *Porter*'s reach far more broadly. S*ee, e.g.*, *Neree v. O'Hara*, No. 09-CV-802 (MAD) (ATB), 2011 WL 3841551, at *19, *report and recommendation adopted*, 2011 WL 3841553 (N.D.N.Y. Aug. 29 2011) (recognizing that pursuant to *Porter*, "double jeopardy protection does not apply to prison disciplinary proceedings"). Indeed, *Porter*'s analysis likely applies with even more force to administrative segregation, which may be entirely non-punitive in nature.

Accordingly, this Court largely adopts the same line of reasoning espoused by the Second Circuit in *Porter v. Coughlin* and finds that "the presence of a legitimate, nonpunitive purpose" of administrative segregation renders it civil rather than criminal, and beyond the reach of the Double Jeopardy Clause. 421 F.3d at 148. Plaintiff's double jeopardy claim is, therefore,

dismissed.

**F. Conspiracy**

Defendants next contend that Plaintiff fails to adequately plead that Defendants Griffin, Demo, Chappius, Keller, and Kirkpatrick engaged in a § 1985(3) and § 1986 conspiracy to improperly subject him to administrative segregation. (Compl. at 32–33.) This Court agrees.

"A conspiracy claim under Section 1985(3) requires a plaintiff to allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan*, 794 F.3d at 296. Notably, the conspiracy "must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Id.* (internal quotation marks omitted).

Here, Plaintiff fails to allege sufficient facts to suggest that Defendants' actions were motivated by any "class-based, invidious discriminatory animus." Indeed, Plaintiff specifically states that Defendant Griffin and Demo fabricated the charges that led to Plaintiff's administrative segregation to "retaliate[ ] against him because of his requests to meet with Commissioner Annucci." (Compl. ¶ 87.) Such allegations, while perhaps indicative of a First Amendment retaliation claim, do not satisfy the requirements for a conspiracy claim under § 1985(3).

Moreover, because a § 1986 claim "lies only if there is a viable conspiracy claim under [§] 1985," *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994), Plaintiff also fails to plausibly allege a § 1986 claim.

Plaintiff's conspiracy claims are, therefore, dismissed. However, to the extent that Plaintiff is

able to, in good faith, allege more facts that would support a finding of invidious discriminatory animus, Plaintiff is granted leave to re-plead his claim.[9]

### G. Eighth Amendment—Deliberate Indifference to Medical Needs

This Court also finds that Plaintiff has failed to state a claim for deliberate indifference to his medical needs under the Eighth Amendment.

Plaintiff contends that Defendant Griffin, as the Superintendent of Green Haven, and Defendant Chappius, as the Superintendent of Elmira, violated his rights by failing to transfer his medical records when he was moved between the two facilities. (Compl. ¶¶ 99–100.) Because he could not receive medical attention until his new facility acquired his records, Plaintiff claims he was left without adequate treatment for nearly three months.

A prisoner's claim for the deprivation of adequate medical care is derived from the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). To prevail on such a claim, "a plaintiff must prove that (1) objectively, the alleged deprivation of medical care was sufficiently serious, and (2) subjectively, that the defendants acted or failed to act while actually aware of a substantial risk that serious inmate harm will result." *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (internal quotation

---

[9] Although Defendants argue that Plaintiff's claim would nonetheless fail under the intracorporate conspiracy doctrine, this Court disagrees. Under the intracorporate conspiracy doctrine, "officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Hartline v. Galo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (internal quotation marks omitted). However, "[u]nder the personal stake exception, the doctrine does not apply 'when the alleged conspirators are motivated by an improper personal interest separate and apart from that of their principal.'" *Ali v. Ramos*, No. 16-CV-01994 (ALC), 2018 WL 1353210, at *6 (S.D.N.Y. Mar. 14, 2018) (quoting *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 388 (S.D.N.Y. 2013) (collecting cases)).

Here, Plaintiff alleges that Defendants engaged in a conspiracy to unjustifiably punish Plaintiff, which may have been motivated by their personal interests. Accordingly, the intracorporate conspiracy doctrine may not necessarily bar Plaintiff's claims.

marks omitted).

Where an inadequate medical care claim rests on a failure to provide *any* treatment for an inmate's medical condition, the first, objective, prong requires the court to "examine whether the inmate's medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280. To satisfy this showing, a Plaintiff must plausibly allege that "his medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (internal quotation marks omitted). Additional factors "relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Davis v. McCready*, No. 14-CV-6405 (GHW), 2017 WL 627454, at *4 (S.D.N.Y. Feb. 15, 2017) (internal quotation marks omitted).

The second, subjective, prong requires that the Defendant acted "with a sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280. The official's state of mind, however, "need not reach the level of knowing or purposeful infliction of harm." *Id.* Rather, "it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Id.* Deliberate indifference requires that "the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.*

Here, Plaintiff has plausibly alleged a sufficiently serious medical need. Plaintiff claims that he faced constant pain, nose bleeds, sores, blisters, and months of constipation due to his lack of appropriate allergy medication. (Compl. ¶ 99–102.) Additionally, Plaintiff also contends he was denied dental care while one of his teeth deteriorated for months, and eventually dislodged from his mouth entirely. (*Id.* ¶ 103.) As a result, Plaintiff alleges, he experienced

significant eating disruptions and substantial pain. (*Id.*) If true, such symptoms suggest that Plaintiff experienced "chronic and substantial pain" as well as significant disruptions of his daily life—thereby satisfying the first prong of the inquiry for the purposes of a motion to dismiss.

Plaintiff, however, fails to satisfy the second, subjective, prong: the complaint is devoid of any facts relating to Defendants' state of mind. Plaintiff does not allege that either Defendant was directly aware of his serious medical needs. Without any such allegations, Plaintiff cannot show that Defendants "kn[e]w of and disregard[ed] an excessive risk to [his] health and safety." *Davis*, 2017 WL 627454, at *4 (noting that an official accused of deliberate indifference must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). Accordingly, Plaintiff's claims for deliberate indifference to his medical needs are dismissed. To the extent, however, that Plaintiff can provide more factual allegations relating to Defendant's culpable state of mind, Plaintiff is granted leave to replead this claim.

### H. Disruption of visitation schedule

Plaintiff alleges that Defendants Isaacs and Sears terminated his May 30, 2015 visit with his fiancé in retaliation for a verbal complaint that Plaintiff lodged against Defendant Sears the day before. (Compl. ¶¶ 105–108.) Defendants contend that even assuming Plaintiff has adequately stated a First Amendment retaliation claim for their conduct, they are entitled to qualified immunity. This Court agrees and consequently dismisses Plaintiff's retaliation claims against Defendants Sears and Isaacs.

As this Court has noted, a First Amendment retaliation claim requires (1) that the plaintiff engaged in protected conduct, (2) that the defendant took an adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech or conduct and the adverse action. *Dolan*, 794 F.3d at 294.

Whether Plaintiff's verbal complaint constitutes protected speech under the First Amendment is a close question—or at the very least, not one that is clearly established under Second Circuit precedent. "[N]ot every statement an inmate makes in prison is afforded First Amendment protection." *McIntosh v. United States*, No.14-CV-7889 (KMK), 2016 WL 1274585, at *26 (S.D.N.Y. Mar. 31, 2016). As the Supreme Court has recognized, "[i]n a prison context, an inmate does not retain those First Amendment rights that are inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pilgrim v. Luther*, 571 F.3d 201, 205 (2d Cir. 2009) (internal quotation marks omitted) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977)).

While courts in this Circuit have found that verbal complaints may be protected for the purposes of a First Amendment retaliation claim, *see McIntosh*, 2016 WL 1274585, at *26 (collecting cases), "the Second Circuit has yet to articulate a bright line rule regarding

constitutionally protected oral speech by an inmate." *Ford v. Martuscello*, No. 14-CV-01566 (DNH) (DEP), 2016 WL 5322166, at *1 (N.D.N.Y. June 23, 2016). Because the law is not well-settled regarding whether an inmate's verbal complaint constitutes protected speech, it would not necessarily be "clear to a reasonable officer" that taking an adverse action in response to such a complaint would rise to the level of a constitutional violation. Accordingly, this Court finds that Defendant Isaacs and Sears are entitled to qualified immunity, and Plaintiff's retaliation claims against these Defendants are dismissed. *See Rodriguez v. Phillips*, 66 F.3d 470, 479 (2d Cir. 1995) (granting qualified immunity where an officer allegedly retaliated against a prisoner for verbally defending another inmate because there was "no clearly established First Amendment right to approach and speak to" the officer"). [10]

## I. Equal Protection

Plaintiff also fails to plausibly allege that Defendants Griffin, Chappius, Demo, Isaacs, Sears, Bellamy, Scranton, and Keller violated his Equal Protection rights.

The Equal Protection Clause of the Fourteenth Amendment declares that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432,

---

[10] To the extent that Plaintiff raises a distinct due process claim for the suspension of his fiancé's visitation privileges, such a claim is also dismissed as Plaintiff has not identified any protected liberty interest at stake. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989) ("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause."); *Mateo v. Heath*, No. 11-CV-636 (LAP), 2012 WL 107586, at *3 (S.D.N.Y. Mar. 29, 2012) ("Most courts hold that contact visits of prison inmates are a privilege for inmates, not a right, and thus do not give rise to a liberty interest protected by the due process clause"); *Zimmerman v. Burge*, No. 06-CV-0176 (GLS)(GHL), 2008 WL 850677, *2 (N.D.N.Y. Mar. 28, 2008)(finding no state-created liberty interest in contact visitation).

439 (1985). To sustain an equal protection claim, a plaintiff must prove that (1) " the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Tyk v. Surat*, 675 F. App'x 40, 42 (2d Cir. 2017) (summ. order) (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004)).

Under the first prong, a Plaintiff must identify a "similarly situated" comparator and plausibly allege that he or she was "treated differently" to that comparator. *Hampshire Recreation, LLC v. The Vill. of Mamaroneck*, 664 F. App'x 98, 100 (2d Cir. 2016) (summ. order). Plaintiff fails to make such allegations here. Indeed, Plaintiff does not provide even a single comparator that was subject to different treatment. Accordingly, Plaintiff's equal protection claim is dismissed. To the extent that Plaintiff can identify a similarly situated comparator that was subjected to different treatment, Plaintiff is granted leave to replead his claim.

**J.  Improper Handling of Grievances**

Plaintiff alleges that Defendants Chappius, Bellamy, and Isaacs systematically failed to investigate and respond to his grievances pertaining to his confinement at Elmira Correctional Facility.

To the extent that Plaintiff attempts to raise a distinct due process claim for Defendants' alleged failures to follow DOCCS grievance procedures, such claims are dismissed. As this Court has already addressed, Plaintiff must have some protected liberty interest to establish a due process violation. *See supra* Section II.B.i; *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Here, Plaintiff "does not possess a protected liberty interest in having Defendants follow

prison policy." *Blandon v. Capra*, No. 17-CV-65 (KMK), 2017 WL 5624276, at *12 (S.D.N.Y. Nov. 20, 2017). As such, a due process violation cannot be premised on Defendants' alleged failure to abide by such policies. *See Holland v. City of New York*, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016) ("An alleged violation of a prison policy, directive, or regulation, in and of itself, does not give rise to a federal claim, because federal constitutional standards rather than state law define the requirements of procedural due process." (internal quotation marks omitted) (quoting *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990))); *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) ("[T]he law is settled that failure to follow a DOC[C]S Directive or prison regulation does not give rise to a federal constitutional claim.").

Nor does Plaintiff adequately plead a First Amendment violation. "The First Amendment guarantees meaningful access to the courts and the right to petition the government for redress." *Mimms v. Carr*, No. 09-CV-5740 (NGG) (LB), 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983)), *aff'd* 548 F. App'x 29 (2d Cir. 2013). Courts in this Circuit have found, however, that "[t]he First Amendment is not implicated [ ] where prison officials deny an inmate access to grievance procedures." *Id.*; *see also Martinez v. Schriro*, No. 14-CV-3965 (KMW) (RLE), 2017 WL 87049, at *3 (S.D.N.Y. Jan. 9, 2017); *Corley v. City of New York*, No. 14-CV-3202 (GHW), 2015 WL 5729985, at *9 (S.D.N.Y. Sept. 30, 2015). As these courts have recognized, when an inmate files a grievance and is dissatisfied with the result, he may take full advantage of the multi-step Inmate Grievance Program ("IGP") and appeal the adverse decision to the superintendent of the facility. *See Espinal*, 558 F.3d at 125; *see also* 7 NYCRR § 701.5. The inmate may then appeal an adverse decision by the superintendent to the Central Office Review Committee ("CORC"). *Id.* Further, once those administrative remedies have been exhausted, the inmate may file suit in federal

court. Indeed, even where the conduct of prison administrators renders these grievance procedures entirely unavailable to an inmate, the inmate's failure to exhaust such remedies will be excused and his claims may be heard by a federal court. *Mimms*, 2011 WL 2360059, at *10 (citing *Macias v. Zenk*, 495 F.3d 37, 41 (2d Cir. 2007)). Thus, "First Amendment rights to petition the government and access the courts are not infringed when prison officials deny inmates access to grievance procedures," *id.*, and Plaintiff's claim is dismissed.

### K. Telephone Impersonation Scam

Plaintiff additionally alleges that Defendants Scranton, Chappius, Keller, Griffin, Demo, and Kirkpatrick engaged in an "impersonation telephone scam," in violation of his First and Fourteenth Amendment rights. (Compl. at 34.) Specifically, Plaintiff alleges that on June 4, 2015, Defendant Scranton "lured" him to a telephone, dialed a number, asked the individual on the other line for a "Commissioner Gore," and handed the receiver to Plaintiff. (*Id.* ¶ 64.) Plaintiff then "discussed his predicaments" with this individual, only to later discover that the person on the other end of the line was not "Commissioner Gore." (*Id.*) Plaintiff alleges that through such actions, Defendants "intentionally deprive[d]" him of his right to file a grievance and denied him due process of law. Both of Plaintiff's claims fail.

With regard to his First Amendment claim, Plaintiff does not allege how Defendants' alleged actions deprived him of his right to "petition the government for redress." Defendants' impersonation of a "Commissioner Gore" on the telephone in no way impacted Plaintiff's ability to officially file a grievance, appeal any adverse decision, and eventually litigate his complaint in federal court. Accordingly, these actions do not amount to a First Amendment violation. *See supra* Section II.J.

Plaintiff similarly fails to state a due process claim. Most notably, Plaintiff does not identify any protected liberty interest that Defendants' infringed through their "scam". Accordingly, Plaintiff's claims relating to this alleged "telephone scam" are dismissed. As there are no other claims against Defendant Scranton, he is dismissed from this action.

## L. Severance and Transfer of Claims

Defendants finally request that any remaining claims arising from Plaintiff's confinement at Elmira Correctional Facility and unrelated to the administrative segregation hearing—including Plaintiff claims for denials of his grievances and suspension of his fiancé's visits[11]—be severed and transferred to the Western District of New York. (Defs.' Mot. at 31.) Because all such claims have been dismissed from this action, Defendants' request is rendered moot.


## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

## I.     Legal Standards

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of

---

[11] Defendants also requested severance and transfer of Plaintiff's "conditions of confinement claims." (Defs.' Mot. at 32.) However, as Plaintiff clarified in his opposition, he is not challenging his conditions of confinement at Elmira. (Pl.'s Opp. at 29.) Rather, Plaintiff was raising a procedural due process claim, arguing that his restrictive confinement subjected him to "atypical and significant hardship" and, thus, must be preceded by procedural due process protections. (*Id.*). Because such a claim implicates both the Green Haven Defendants, who initially subjected him to administrative segregation, and the Elmira Defendants, who continued that segregation, Defendants' request for severance based on misjoinder is inapplicable. *See* Fed. R. Civ. P. 20(a)(2) ("Persons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action.").

material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summ. order).

In deciding a motion for summary judgment, the Court must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted). However, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great. Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Further, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

## II.    Analysis

### A.  Procedural Due Process Claim

Plaintiff has cross-moved for summary judgment on the procedural due process claim arising from his administrative segregation hearing. (Pl.'s Opp. at 4.) Although this Court finds that Plaintiff has adequately pled a procedural due process claim against certain Defendants, *see supra* Section II.B, the Court finds summary judgment premature at this juncture—particularly considering that discovery has yet to commence. Further, numerous factual questions permeate Plaintiff's due process claim, including, *inter alia*, whether Defendants acted in bad faith in pursuing administrative rather than disciplinary segregation and whether Defendants independently assessed the reliability of the confidential informant. *See supra* Section II.B.ii.

Accordingly, Plaintiff's cross-motion is denied, without prejudice to renew as this case progresses.

### B. Request for a Valentin Order

In his opposition, Plaintiff included a request that this Court issue an order pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) to identify the confidential inmate informant who provided prison officials information leading to Plaintiff's administrative segregation. (Pl.'s Opp. at 34.) However, Plaintiff only asserted a conspiracy claim against the unknown Defendant. Because Plaintiff's conspiracy claims have been dismissed, *see supra* Section II.F, Plaintiff's application is denied. Should Plaintiff successfully assert conspiracy claims in the future, the Court will reconsider Plaintiff's request.

### C. Request for pro bono counsel

Plaintiff additionally requests that the Court appoint pro bono counsel to represent him. Unlike in criminal proceedings, however, the Court does not have the power to obligate attorneys to represent indigent *pro se* litigants in civil cases. *See Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 308–09 (1989). Instead, pursuant to 28 U.S.C. § 1915(e)(1), the Court may, at its discretion, order that the Office of Pro Se Litigation request an attorney to represent an indigent litigant by placing the matter on a list circulated to attorneys who are members of the Court's pro bono panel. *Palacio v. City of New York*, 489 F. Supp. 2d 335, 344 (S.D.N.Y. 2007).

The factors to be considered in ruling on a motion for pro bono counsel are well settled and include "the merits of plaintiff's case, the plaintiff's ability to pay for private counsel, [plaintiff's] efforts to obtain a lawyer, the availability of counsel, and plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989).

Plaintiff has not demonstrated that the appointment of counsel is warranted at this time. Plaintiff has not provided any information regarding his attempts to obtain a lawyer, nor has he

explained why the case is so complex as to require counsel. Accordingly, Plaintiff's request is denied without prejudice to renew. Should Plaintiff decide to renew his request, he may do so using the application form for pro bono counsel, keeping the aforementioned factors in mind.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's cross-motion for summary judgment is DENIED.

Plaintiff shall have until April 30, 2018 to amend his complaint in accordance with this Court's decision. If Plaintiff elects to file an amended complaint, Defendant shall have until 21 days from the date of Plaintiff's filing to move or file responsive pleadings.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 46 and remove Defendant Scranton from this action. The Clerk of the Court is further directed to mail a copy of this Opinion to *pro se* Plaintiff and file proof of service on the docket.

Dated:   March 31, 2018
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge