USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 05/07/18

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Amin Booker,

                    Plaintiff

          -against-

Thomas Griffin-Superintendent Green Haven facility;
E. Demo - D.O.C.C.S. Investigator, Paul Chappius jr.-Superin-
tendent Elmira facility; G-Keller Captain Elmira; M.
Kirkpatrick-Superintendent Clinton facility; John Doe-
Confidential Informant; Jeff Scranton Luietenant Elmira;
Karen Bellamy-Director of Central office Review Committee
D. Venettozzi, Director of S.H.U.          Defendants

AMENDED COMPLAINT UNDER
THE CIVIL RIGHTS ACT
TITLE 42 U.S.C. § 1983

Docket No. 16-CV-72
(NSR) (P.E.D)

JURY TRIAL DEMANDED

<u>JURISDICTION AND VENUE</u>

1. This action is authorized by 42 U.S.C. §§ 1983, 1988, 3613(a), Subject matter jurisdiction Confered by 28 U.S.C. §§ 1331 (d)(1)(A)-(d), 1343 (a)(3) and 1367(a)

2. Pursuant to 28 U.S.C. §§ 2201 & 2202 this Court has jurisdiction to declare the rights of parties. Rule 65 of the Fed. R. Civ. P. authorizes injunctive relief, and 42 U.S.C. § 1988, 3613 (c)(a) & 28 U.S.C. § 2412 authorize this court to award Attorney fees, (28 U.S.C. § 1915 (e)(1))

## PARTIES

3. At all times relevant to the complaint, Amin Booker (herein-after-Plaintiff) was in the custody of the New York State Department of Correctional and Community Supervision (D.O.C.C.S.) residing in Green Haven & Elmira Correctional facilities. (hereafter: Green Haven; or Elmira)

## DEFENDANTS

4. Thomas Griffin (hereafter: Griffin) at all times relevant hereto, was the Superintendent at Green Haven

5. E. Demo (hereafter: Demo) at all times relevant to the Amended Complaint, was an investigator employed by D.O.C.C.S.

6. Paul Chappius jr. (hereafter: Chappius) at all times relevant hereto, was the Superintendent at Elmira

7. Michael Kirkpatrick (hereafter: Kirkpatrick) at all times relevant hereto, was the First Deputy Superintendent at Elmira

8. Gregory Keller (hereafter: Keller) at all times relevant hereto, was the Captain, promoted to Deputy Superintendent of Security at Elmira

9. Jeff Scranton (hereafter: Scranton) at all times relevant hereto, was a Luietenant at Elmira

10. John Doe (hereafter: Doe) at all times relevant hereto, was an inmate confidential informant at Green Haven

11. Karen Bellamy (Bellamy) at all times relevant hereto, was the director of D.O.C.C.S. inmate greivance resolution committee, responsible with the investigation and review of all inmate filed greivances and resolving with corrective actions said matters & making the final determinations thereof

12. Donald Venettozzi (hereafter: Venettozzi) is At all times relevant, the director of D.O.C.C.S. special Housing Units (hereafter: S.H.U.) responsible for the manner in which S.H.U. is ran, housing of inmates, enforcing all and corrective actions of all, complaints regarding S.H.U. confinement & conditions, appointing and training all hearing officers and S.H.U. staff, investigating all greivances relevant to S.H.U. and the developing of all S.H.U. programs, operations, functions and monitoring such

13. During all times relevant to complaint, Defendant Doe was knowingly and willfully acting in concert with Griffin and Demo, receiving payments and/or favors- and is sued in his individual capacity

14. All defendants except Doe, were employed by D.O.C.C.S. acting in their official capacities under the color of law of the United States Constitution, New York State Constitution, Statutes, Laws, Collective bargaining agreements, Regulations, Customs and proffessional judgments.. Chappius, Venettozzi, & Bellamy are sued in their official capacities and individual capacities, Defendants Griffin, Demo, Doe, Keller, & Kirkpatrick are sued in their individual capacities.

<u>FACTS</u>

RETALIATION, FREEDOM OF SPEECH, AND JOB INFRINGMENT

3

15. Plaintiff was the elected (ILC) Inmate liason Committee Representative c Secretary and E-Block Rep. in Green Haven in year 2015.

16. Griffin personally authorized plaintiffs appointment to the I.L.C. pursuant D.O.C.C.S directive # 4002

17. Plaintiffs job duties as Secretary and Rep. required him to act as a Liason between inmates in general confinement and administrative staff, record & file greivances on behalf of inmate population, seek domestic resolutions acceptable by staff & facility/D.O.C.C.S. directives, to prepare a typed issue agenda each month & participate in a monthly meeting with the Committee and executive team, ie (Superintendent, Deputies, Captains, Staff advisor, & Stenographer) to review agenda.
   Plaintiffs Secretaries duties require him to manage the institutional B funds, occupational therapy funds monthly, including but not limited to paying timely-monthly facility population bills, purchasing & repairing & furnishing items for general population, family visiting programs — exceeding a monthly budget of $18,000.00

18. Between Jan-Mar. 2015 Green Haven was experiencing an influx of problems, levels of corruption of staff, Albany directed Cert team searches, arrests & Criminal charges of officers, and certain staff informed plaintiff that Griffin was directing officers to start carrying batons in their hands and beating on inmates

19. Plaintiff & other I.L.C. members were receiving inmate complaints of officer assaults aggressiveness & that Griffin was instructing officers to harm inmates. This prompted the ILC to file a complaint and request a

4

meeting with acting Commissioner Mr. Anthony Annucci, and Hub Superintendent Mrs. Ada Perez to address these concerns.. The agenda was typed and submitted to the executive team in March 2015 by our Chairman.

20. The date after submission, Griffin entered the I.L.C. office with three staff persons, asked the Chairman, two ILC members & myself, "What is going on with request # 8 on the agenda". We reiterated the concerns and source of information, & Griffin asked, "Where are you getting this from", but no one identified Any specific officer. Griffin indicated he did not like that issue raised

21. A few days later, several family members of inmates, and inmates, complained to plaintiff that while in the family visiting room, a Sgt. Conforti was alarmingly violent - slamming a telephone into the floor in the midst of visitors, shattering it.

22. After receiving 14 complaints, plaintiff bought the matter to ILC Chairman & Committee, and was instructed that "the matter is deemed urgent, request an emergency executive meeting to discuss resolution." On March 29, 15 plaintiff filed the request to the Executive team.

23. Griffin did not convene the monthly meeting in March since ILC hadn't changed the typed agenda as he'd indicated. Thus, in April 2015 we resubmitted the agenda from March, & plaintiffs letter requesting "EMERGENCY MEETING", and the populations greivance

24. On April 9, 2015 Griffin convened the I.L.C. meeting, denied our requests for Commissioner, & the Deputy stated that "the Sgt. dropped the telephone

by mistake, in the visit room," & they denied plaintiffs request to conduct interviews

25. On around April 13, 15 the cell block officer told plaintiff to "Pack your property, You are being transferred to F-block". Plaintiff asked her "how is this, I have tenureship in E-block as I.L.C. Rep." The officer said, "You are fired, Superintendent Griffin called and said you are no longer the Rep." Upon leaving E-block I saw Captain Carey in corridor and asked him the situation, he replied, "You pissed Griffin off the other day man, you are not his favorite person right now, You have to know there are certain things you have to let fly."

26. On April 21, 2015 plaintiff was transferred back to E-block, around 10 am. At 1 pm he attended commissary, purchased a food buy and photo tickets for the upcoming family day Picnic, & tickets for he & his family to participate.. Then, at approximately 4:30 pm - a C.O. Gail and a female Sgt. came to his cell, hand cuffed him and marched him into the package room

27. Griffin was inside the package room, he told plaintiff to sit in the chair, whereupon the plaintiff told him that, "I can't sit like this, I pulled my back lifting weight in the power-lifting program." Griffin replied, "I don't give a shit about your back injuries sit down" He instructed his officer to push plaintiff down into a position laying off of the chair cuffed to back

28. Griffin admonished plaintiff saying, "I got you now Booker, who the fuck do you think you are trying to go above my head and have my bosses come into my facility. I run things here. You don't question my Authority.. You're trying to be a fucking lawyer for these coons, you coon boy."

6

29. He then told plaintiff, " tell me the staff that told you that im ordering assaults." Plaintiff replied, "I can't reveal names, I was just doing my job". Griffin threatened that, " Im having your cell flipped right now, i'll find everything anyway. — I put you on the I.L.C., I approved you for family reunion program, I looked at your records and see that your family lives close to Green Haven & they visit you alot, but im gonna send your ass upstate N.Y., miles away, let's see if your family visits there."

30. Griffin threatened plaintiff that, " Im gonna show you that im so connected with Albany, i'll have you in S.H.U. with a push of a button and you'll be in S.H.U. for years, you'll never get out ass-hole". and, "You want to worry about what my Sgt. does on a visit, i'll see to it you'll loose yours... Im going to make your life miserable in D.O.C.C.S. my brother is a commissioner, I have juice to do what I want."

31. Plaintiff subsequently learned that Griffin had previously retaliated on the ILC members in Eastern Correctional facility, placing them into the S.H.U. on around year 2013-2014 and inmates feared ILC elections thereafter, thus Griffin began forcing ILC. appointment via the facilities Program committee

32. He had plaintiff escorted back to his cell and his cell was destroyed, his I.L.C. log was taken. He also told plaintiff he'd "heard he's the ILC person suggested contact Commissioner"

33. On April 22nd, plaintiffs fiancé Ms. Tawana Baker visited him and he'd explained to her the events occured. At approximately 12 pm, a luietenant interupted plaintiffs visit, claimed he needed a quick word with plaintiff, escorted

7

him around a corner saying he has a question for Griffin. Two C.O.'s were awaiting him, hand cuffed and escorted him to the draft room while his visitor sat waiting his return, abducted him, stripped him naked, spread his buttocks, run his fingers through his mouth, lifted his penis & testicles placed his personal boots, shirt, belt into a bag, cuffed & shackled him.

34. The C.O.'s then had him dress in generic items, and without explanation, placed him on a van, transfered him to Elmira's S.H.U. and humiliated him with the same strip frisk procedure, after removing the cuffs & shackles.

35. Ms. Baker wasn't notified of Plaintiffs departure until after her enquiry. She was left stranded outside of Green Haven crying for several hours until the visit transportation bus returned to pick-up its passengers at 3:30PM.

36. On April 24, 15 a Sgt. Shope had plaintiff escorted to his office around 7-8 pm, and told him, " Griffin called and said to tell you to "remember what he told you about miles away." The Sgt. then said " I don't know what you did to piss Griffin off, but you are way out on a limb, that guy is connected here at Elmira and his fucking Uncle is Commissioner Leclaire, his brother is a Commissioner, you are Fucked," and he whistled.

37. Prior to the transfer, Demo came to Green Haven on Apr. 21, 15 around 9 PM, had plaintiff bought into a room, introduced himself as a D.O.C.C.S. investigator " looking into an excessive force used on an inmate Africa in G-block on Apr. 20 or 21, 15." Plaintiff informed him, " I do not know the inmate nor of the incident", He is in "E-Block". Demo said, " Griffin told me that you are

8

the uppity boy that represents the coons." Plaintiff told Deno, "I would like to leave, this interview is over." Deno replied, "yeah, i think it is time for you to leave, i'll personally see to it," in a threatening nuance.

38. Griffin and Deno, with the aid of John Doe, subsequently plotted a retaliation plan - making a false story that plaintiff "gave an inmate a letter for solidarity, he is a gang member, he admitted to Griffin that he use to be in a blood organization and could stop a demonstration he'd heard about." The report was written Apr. 24, 15 and issued to plaintiff on Apr. 25, 15

PLAINTIFFS CONDUCT

39. Plaintiff isn't a gangmember, had not heard nor spoke of a work demonstration, had never told Griffin that he did.. He maintained his weekly Mon. & Tues. law library scheduled an & Pm module, a consecutive year fr. July 2014 - Apr. 2015. He & his family continuously pursued his post conviction release, they were aproved for a 50 hr. family reunion program (F.R.P) and he'd just purchased on 4/14/15 $82.00 clothing & supplies order for the F.R.P.

40. Plaintiff was the facilitator & Peer Counselor for the "Empowering The Youth" program. Approved by Griffin & Green Havens executive team, who provided the class room, staff advisor etc. E.T.Y. is a "Gang Prevention" program. Plaintiff facilitated from 2014 - Apr. 22, 2015 his departure date.

41. He was the E-block fund raiser rep. for the Asian Cultural Organization (A.C.O.), managing the monthly merchandise pick-up & sales of Pastries-Bakeries, etc. handling inmates funds. Also aproved by the executive team.. On Apr. 13, 2015 he'd picked-up an order of merchandise of $450.00

42. He was on the facilities: weightlifting team, Boxing team, winter basketball league.. the Co-Chairman of the National Association for the Advancement of Colored People (NAACP) Green Havens chapter. Maintaining Positive growth, learning Mandarin language & culture.. Attended his weekly, religous

9

worship duties & services scheduled Fridays pm & Evening modules, and Saturdays 8:30 an to 10:45 am

43. He telephoned his family daily, received visits from his loved ones not less than 2 times a week. 59 visitors between Jan.15-Apr.22,15 alone. Monthly food packages, commissary purchases twice a month.. In Apr.2015 he'd purchased through the ILC, a $4000.00 gift package to distribute to family visitors on mothers day weekend in Green Havens visit room in May, mothers day weekend.

44. On Apr.21,15 Griffin did not interview plaintiff. Griffin and Demo payed John Doe or gave him some favor, to aid them by agreeing to their fake story.. The "gang & demonstration" story, is the classic go-to move by D.O.C.C.S. staff to retaliate on an inmate they want to harm.

## DUE PROCESS VIOLATIONS

45. Griffin and Demo in retaliation to plaintiff filing the two grievances, willfully and intentionally manufactured a false report, with aid of Doe, to confine plaintiff punitively

46. Demo authored an (Ad-seg) Administrative Segregation recommendation dated Apr.24,15 which was a filibuster rehashing plaintiffs criminal convictions & sentences, number of alleged misbehavior reports he'd received during prior conviction, on rikers island, and current custody in D.O.C.Es. A number of misbehavior reports he had never either a notice of nor a hearing. Relabeling charges which he'd been previously exonerated of, or were ordered expunged from his records by a Supreme Court Justice. All restated as A reason to indefinitely confine him punitively

47. The recommendation was further, an inadequate notice, accusing plaintiff of " giving a letter to an inmate in Green Haven to disseminate to the inmate population calling

10

for solidarity," without any date, time, location of the transaction, nor identity of the inmates. Accuses him of "being a gang leader, influential with population, previously organized work strikes, and nothing happens unless he approves and knows," but it doesn't identify dates, locations, persons, nor explains the meaning of "nothing happens". It doesn't identify who, when, or where it was determined that plaintiff was a managment problem

48. Chappius assigned Kirkpatrick to preside as hearing officer. Plaintiff requested an employee assistant to obtain evidence to prepare a defense. Kirkpatrick commenced the hearing on May 1, 15, convened the hearing over several dates, May 1, 5, 7, & 12 - recording two hours of testimony.

49. Plaintiff objected to the inadequacy of the notice, Kirkpatrick called Griffin on May 7, 15 and Demo on May 12, 15 as his witnesses. Griffin testified that Doe informed him that plaintiff "was threatening inmates in Green Haven's yard & soliciting inmates, to refuse program, on some date between Apr. 13 - Apr. 21, 2015. That Doe told this account to he & Demo simultaneously". He stated that he'd "terminated plaintiffs 4/22/15 visit in accord with directive #4403, and that an inmate informed him that I was the ILC inmate that suggested to request the meeting with Annucci."

50. Demo testified contradictorily to Griffin, alleging, he " was conducting random interviews with 24 inmates regarding an excessive force on an inmate named Africa, when one inmate told him that I gave a letter to an inmate whom Demo was unable to find his name, to disseminate to population. That Doe told this to he and Griffin simultaneously.. They weren't able to determine wether the inmate gave the letter to population.. That Griffin later contacted him, informing him that Doe had

11

more information, so he reinterviewed Doe on Apr. 28, 15 and Doe said that plaintiff was a member of the Blood gang & influential with population."

48. Based on their testimonies, plaintiff requested his assistant, to obtain a new document and witness list, including the Green Haven go-around logs, & area logs from 4/13/15 - 4/21/15 to rebut the false testimonies

49. The go-around lists are officer logs, that are taken prior to each Modules (an, Pm, & Eve.) Seven days a week. Each inmate must request a destination in order to be let out of Call. If an inmate has a pre-scheduled callout, i.e. (Clinic, Program, Gym, etc.) the go-around will have a pre-mark notifying the C.O.. The go-arounds are storaged for 30 days in the facilities arsenal, per. D.O.C.C.S. directives.. All inmates are accounted at all times through this manner.

50. Each callout area, i.e. (school, clinic, law-library, etc.) have attendance log books or logs, that officers and/or inmates must sign. No inmate is allowed in an area he isn't prearranged to be, and officers issue misbehavior reports to any inmate who is out of place.. The logs are also storaged for 30 days.

51. Plaintiff had not been in the yard at any time between 4/13/15 - 4/21/15, or any place it was alleged that he solicited a work strike. Even though the report hadn't alleged he partook in a work-strike, and Griffin & Deno made this up only orally at hearing

52. Kirkpatrick adjourned the hearing on May 12, 15 after acknowledging the 30 day expiration of storage, re-called plaintiff's assistant and alleged to be gathering plaintiffs requests. He intentionally prolonged the search for plaintiffs requests until June 12, 15. and

12

never called plaintiff back to the hearing. He disregarded plaintiffs objections that his criminal proceedings and previous charges were finalized in prior proceedings.

53. Kirkpatrick continuing and abetting Griffins retaliation & punitive confining, notified Griffin, Deno & Chappius of their contradictory testimonies and plaintiffs further requests for documents.. They agreed to discard the hearing tapes, prolong the requests until after storage expiration, and Kirkpatrick requested from D.O.C.C.S. Central office over 15 extensions to complete hearing by fabricating that plaintiff, " is requesting new witnesses & documents," over a 40 day period, and on July 1,15 Kirkpatrick transfered to another facility. Plaintiff filed a greivance against Griffin & Kirkpatrick in May 2015

54. On June 4,15 Griffin & Chappius directed Scranton, who willfully abetted them in their retaliation and punitive confinement of plaintiff, to lure him to a phone conference, fabricate that " Commissioner Gore' wants to speak to you"

55. The male on the telephone introduced himself as " Commissioner Gore - "I am investigating your greivance against Supt. Griffin at Green Haven." The person asked plaintiff the identity of person's that informed plaintiff that Griffin was auth- orizing assaults on inmates.. Plaintiff did not identify the staff. The male then asked about the Ad-Seg hearing and his defense. Plaintiff informed him of the testimonies, and that he is trying to obtain documents that will prove he was not in the yard, but in specified areas the entire week.

56. Plaintiff later wrote Commissioner Gore Concerning the tele-conference and provided him additional information relevant to his investigation & exoneration of plaintiff, only to receive correspondence that he'd never spoke to a Gore in Albany.

13

57. The male, Scranton, Chappius, Demo, & Keller utilized this information to restart the hearing, with a different tactic to keep plaintiff confined punitively preventing plaintiff from presenting and/or demonstrating his innocence

58. Chappius assigned Keller to restart plaintiffs hearing as his hearing officer on July 7, 15, after the two of them, with Griffin, Demo & Kirkpatrick apparently agreed on a method to proceed. Keller commenced the hearing biasedly & partially- depriving plaintiffs requests for witnesses & documents. Joined himself with Griffin & Demo by referencing them as one & as he himself was the accuser, i.e. "So we determined it was Booker," "we investigated Booker". He refered to Griffin as "Boss". Coerced answers, deprived witnesses from answering certain questions concerning their prior testimonies, cut short plaintiffs questions, provided his own answers for Demo & Griffin

59. Demo and Griffin both testified on July 17, 2015 giving a significantly different version from their May 7 & 12th, and in a more unified & rehearsed way, within a minute behind one another. Both fabricating. Keller informed plaintiff several times to "appeal it", prior to receiving evidence or testimony, and, throughout the hearing- pre-determing his guilt. Made numerous requests for extensions to complete the hearing using false basis that plaintiff " is requesting additional & witnesses and/or documents", he would not investigate any of plaintiffs defenses nor consider them, and asked only one sided questions to witnesses. Continually violating D.O.C.C.S. hearing regulations, failed to give written reasons for his witness denials, & only sought plaintiffs guilt.

## RES JUDICATA - ISSUE PRECLUSION

60. All of the criminal convictions and misbehavior reports enumerated inside the Ad-seg recommendation for grounds to punitively confine plaintiff in extreme isolation,

14

had already been raised & adjudicated in prior proceedings and all parties had a full & fair opportunity to litigate their sides in those proceedings, and, in most of those instances, plaintiff served in full the dispositions.. Each of them occured and/or was consumated years prior to the 4/24/15 recommendation report

FAILURE TO PROVIDE NOTICE OF CHARGES AND HEARINGS

61. The defendants Demo, Kirkpatrick, Keller, Griffin, Chappius, & Venettozzi confined and/or condoned plaintiffs confinement on the charges that he'd previously, ordered the death of a correction officer by threatening a blood gangs members family in June 2008; Organized a secret Muslim society in Dec. 22, 2004; and planned a facility work stoppage demonstration on Aug. 13, 2013 with seven other inmates

62. Plaintiff had never received a notice of either of those charges, an arrest, nor an opportunity to be heard on any of the charges, & he remains confined on them

INCORRECT INFORMATION MAINTAINED IN RECORDS AND RELIED ON

63. In addition to the three allegations above, Griffin, Demo, Chappius & keller either inserted and/or ratifies the maintaining & reliance on the incorrect info, as well as four more charges, that plaintiff had previously been exonerated/acquitted of, and/or was ordered reversed and expunged from plaintiffs instutional records, (i.e., a) having a visitor smuggle a scalpel, b) assaulting an inmate with a weapon, c) possession of 4.5 grams of marijuana, d) assaulting a staff), by a Supreme Court Justice

64. Keller insisted that despite the exonerations lawfulness, these incident reports will remain, and on July 27, 15 he had the U.I.s & misbehavior reports ordered for plaintiffs hearing, over plaintiffs objections. Demo gave testimony to having acquired these incidents

from D.O.C.CS. F.P.M.S. computer.. Chappius refuse to expunge these from plaintiffs institutional records despite plaintiffs numerous requests & written greivances, and as of current date, Apr. 27, 2018, they still rely on these incidents for keeping plaintiff punitively confined in extreme isolation, with Venettozzis affirmances

### FAILURE TO DISCLOSE  EVIDENCE RELIED UPON

65. Keller obtained evidence from Griffin on some date regarding Doe, relevant to allegations against plaintiff, which Keller was basing his determination of guilt. Keller stated that the information was "confidential" during the hearing, on 7/17/15

66. Plaintiff Requested the sum and substance of the evidence so he could be afforded his right to atleast give a credible defense, if available.. Keller deprived any disclosure, and provided no reasonable justification for his denial

### CONVICTION OBTAINED THROUGH FALSE EVIDENCE FOR ARBITRARY REASONS

67. Griffin And Demo brought the false charges of previous events to arbitrarily punish plaintiff for his filing lawful greivances on behalf of the inmate population.. Keller obtained unusual incident reports, (U.I"s) on July 27, 15 and False testimony from Griffin and Demo, regarding several incidents described above, which plaintiff had been lawfully acquitted of and/or supreme court justice ordered reversed and expunged from institutional records. False testimony that plaintiff conducted a work strike planning at Green Haven

68. Keller still used these evidentiary items to convict plaintiff and hold him punitively confined indefinitely. Chappius refuse to release plaintiff from these convictions, and on Sept. 16, 2015 when plaintiff showed him evidence that these conviction evidence is false, and that the confinement is retaliatory of his filing complaint via the

ILC, Chappius replied, "Im going with Griffin. Whatever he wants", and "Those are your problems, I sleep well at night..I am not reversing anything," "I don't care about the use of expunged charges in your hearing."

<u>INSUFFICIENCY - UNSUBSTANTIAL EVIDENCE</u>

69. Keller reached a disposition on Aug. 21, 15 agreeing with the recommendation. He deemed Doe a reliable source, without having conducted an independent assesment of him, nor any information he provided.. There were no U.I.'s, logs, notes, or reports nor procedural steps taken pursuant to D.o.c.c.s. directive #4004 to indicate that a work-strike/demonstration occured or was attempted by plaintiff or any inmate.

There was no letter obtained, no identity of any participant, and/or victim- as alleged in the report and/or Griffin & Demo's testimony.. There were no names or identifications of any person(s) influenced by plaintiff, nor the type of influence, nor an explanation of the term alleging "nothing happens unless he knows and approves".

70. Griffin testified that he doesn't know the date, time, or yard Plaintiff demonstrated, he don't know the name of any victim or participant.. Demo testified that he doesn't know name, date, location of any attempt to strike, nor the person who disseminated a letter, That he got 16 names of inmates to interview from Griffin, and plaintiff was not a focus of his investigation.. He didn't investigate any allegations he'd written against plaintiff, but he only read them off a FPMS screen. Keller prevented Demo & Griffin from answering questions of wether they'd cross referenced the go-arounds to determine if he'd been in attendance with Doe, or any strike interaction.. Keller hadn't made any inquiry into the totality of facts or circumstances.. D.o.c.c.s. directive #4500 describe & define "Severe Managment problem", and it don't categorize plaintiff at all. Plaintiffs D.o.c.c.s. counselor testified that was not a managment problem, & his guidance records also reflected he was

17

never labled a managment problem. There was no evidence presented to subst-antiate plaintiff was a gang member or any other accusation in the report. Keller simply adopted conclusory allegations with no supporting reliable evidence to substantiate

<u>USE OF ADMIN-SEG AS A PRETEXT FOR PUNITIVE CONFINEMENT INDEFINITELY</u>
<u>AND DISCIPLINARY CONFINING INMATES ABSENT DUE PROCESS OR SANCTIONS</u>

71. Venettozzi maintains a policy throughout D.O.C.C.S. using the term "Ad-Seg" as a pretext for indefinite punitive confinement in extreme isolation units. (S.H.U.'s)

72. Although plaintiff and others, aren't charged with violating a rule, the Ad-Seg hearing is conducted pursuant to D.O.C.C.S. disciplinary hearing directive, but, Ad-Seg inmates arent entitled to disciplinary hearing safe-gaurds

73. The defendant and their agency reps- deceptively represent to the Judicial branches and lawyers, and to the General public that "Ad-Seg is non punitive/non disciplinary," (see Peoples v Annucci, Dockt. No. 11-cv-2694 [S.A.S.] [S.D.N.Y.] [E.C.F. #329 Mar.31, 2016 at 4 n. 6]) while wharehousing Ad-Seg inmates in S.H.U. punitively/disciplinerily for decades.

74. The term Ad-Seg is rhetoric hyperbole only. It has no actual application except to mask it's practical application in D.O.C.C.S. PUNITIVE INDEFINITE CONFINEMENT

75. Chappius, maintains plaintiff indefinite punitive confinement at Elmira S.H.U., i.e. Deprivation of all personal property except 10 photos, legal active, 10 books, religious text.. 24 hrs. 7 days a week confined to cell with opportunity to attend reccreation 1 hr. a day if

18

requested around 5:30-6:30 am if you actually hear the C.O. walking, rec cage is a 14' foot small enclosure of 4 brick walls alone, no out of cell time, no environmental stimuli, only one visit per week inside of a gated dog cage, non-contact, hand cuffed & escorted to & from cell. No telephone, commissary, religous worship, program, education, job, packages, F.R.P., cooking utensils, law-library access, no exercise equipment, no cell window or access to natural light, no fan, ventilation, no watch, no medical appointment in privacy with doctor, no television, radio. No personal linen, clothing, towel, hygenic supplies. Deprivation of life, peace & ability to grow etc....

76. Griffin and Demo deliberately filed an Ad-Seg recommendation in order to punitively confine plaintiff indefinitely, by circumventing due process requirements or proof - for punitive-disciplinary confinement, arbitrarily manipulating the system

77. On Dec.1,15 Keller sat as the chairman of the Ad-Seg 60 day review committee, he set forth a basis to continue plaintiffs Ad-seg confinement, biasedly re-enumerating his hearing determination & findings. Chappius approved his review, and his supervisor approved Chappius'. This basis, has been repeatedly echoed. The defendants, between Dec.1, 2015 and June 1, 2017 have conducted only 8 60 day reviews on plaintiffs confinement. They don't even respect their own review regulations. Current date is Apr. 28, 2018

78. Chappius, Keller, Venettozzi & Bellamy keep plaintiff punitively confined to sanctions without a hearing and disposition of sanctions, and without him even being charged with violating a rule. Plaintiff filed several greivances & letters to each, including but not limited to on: 8/17/15; 1/25/16; 8/8/16; 11/13/16 and on 9/11/15; 2/12/16; 9/2/16; 12/1/16 Chappius denied each greivance requesting his rights to not be disciplinary-sanctioned confined, and Bellamy approved Chappius unlawful answers —

19

continuing the sanction-less, hearingless - sanctions on 11/23/15; 7/28/16; 4/26/17; Keller, who was promoted to Deputy Superintendent of Security, blatantly told plaintiff in Jan. 2018 - "Stop asking me about it, im never taking you off disciplinary sanctions and im never letting you out of S.H.U."

79. Venettozzi failed to train Keller & Kirkpatrick on hearing officer duties, obligations does not monitor their hearing conduct nor correct their errors in accord with hearing officer edict, rules, & training manual - which caused direct harm to plaintiff but he ratified their determinations against plaintiff on appeal.

<u>CRUEL AND UNUSUAL PUNISHMENT</u>

80. Griffin and Chappius transfered plaintiff on Apr. 22, 15 from Green Haven, to Elmira, without forwarding his medical records, depriving him of the ability to be medically observed or treated, placing him in extreme and unreanable reckless danger.

81. Griffin knew plaintiff was suffering a back injury acquired through weightlifting when he observed him in pain on Apr. 21, 15 and plaintiff verbally told Griffin. Plaintiff also suffered severe allergies and was prescribed daily medication at the time prior to being transfered.

82. As a result of his medical records not being transfered, he was not allowed to receive his prescription meds, & suffered severe swollen glands, swollen eyes, nasal congestion, continual sneezing, nose bleeds, nose sores & blisters with pain.. Inflamed back, pain, immobility.. He requested sick call for 2½ months daily before a nurse visited him.. Med. staff informed him that he " is A Green Haven transit inmate, your med. chart isn't here." The nurses told him that they can't " personally treat you without it per policy, and you have to ask the

20

SuperIntendent to have your chart sent to Elmira or to transfer you back to your facility because we can't get it ourselves"

83. Plaintiff suffered an illness resulting in months of constipation, bloating stomach, leading to having to take daily, tablets & medicines in order to defecate. His capped tooth deteriorated, causing mouth odor, until it dislodged while eating and he couldn't get dental services. It bled profusely, caused pain, discomfort and disrupted his eating for months. His back pains worsened unnecessarily, & months later he had to take muscle relaxers & undergo therapy 2 yrs. later. He did not get dental treatment until November 2015.

84. Griffin threatened plaintiff on 4/21/15 that he was "going to make your life in D.O.C.C.s. miserable." He, Demo & Chappius transferred plaintiff on 4/22/15 via an unlawful and/or uncommon method, circumventing D.O.C.C.s. transfer regulations. Did not obtain the required "transfer order," didn't comply with Directives # 0701 VII, 4017 IV, 4011 or notify the necessary parties at Elmira or Green Haven re: his med. chart. They deceived his loved ones by having the D.O.C.C.s. internet publish that he was housed at Green Haven for several months, and sent only 3 guidance folders to Elmira on 4/22/15, kept plaintiffs personal property at Elmira for weeks, until he & his family made numerous complaints.

85. Griffin & Chappius cemented his transfer roguely by using nepotism, writing Griffins brother, Patrick Griffin (A Commissioner) days after already transfering him, on 4/24/15. Plaintiff and his family had made several complaints to the Commissioner, Assembly Chair man of New York, Green Haven & Elmira re: him needing his property & medical help. Assembly Party, Ms. L. Walker contacted D.O.C.C.s. Commissioner in May 2015 concerning the fact D.O.C.C.s website has him listed at Green Haven, his overall status, the threats made against him prior to being transfered. Griffin reasonably knew that his charts

weren't sent to Elmira and plaintiff would not be able to receive medical treatment but he recklessly and intentionally failed to rectify the matter, although it was his responsibility to do so, and didn't answer Mrs. Walkers complaint.

86. In June 2015 plaintiff spoke to Chappius, explained his medical problems and asked Chappius to "send him back to Green Haven or have my chart sent to Elmira", and Chappius replied, "You don't tell me what to do". Plaintiff informed him what the nurse explained to him about the chart, and Chappius walked off and still did not have his chart sent, although it was his responsibility to do so.

87. In June 2015 plaintiff filed a facility greivance about not receiving med. treatment. The greivance committee was told that plaintiff is a transit inmate and per policy, his chart isn't Elmira & can't receive treatment. The Commitee requested Chappius to "revisit said policy and afford plaintiff med. treatment" on July 20, 2015. Chappius still did not send for his chart, and on Aug. 12, 2015 replied to the Committee, a generic circumvention statement that, "Plaintiff is receiving treatment." Plaintiffs chart wasn't transfered until on or after Aug. 13, 2015

ATYPICAL AND SIGNIFICANT HARDSHIP

88. Griffin, Demo, Venettozzi, Keller, Bellamy, Kirkpatric and Chappius - without Due process of law, either punitively confined and/or ratified punitive confinement and it's conditions upon plaintiff in Elmira's solitary isolation unit for three consecutive years, one week, and counting. Deliberately distanced him by miles away from his loved ones. Cut off several methods of communication. Deprive him of his rights and privilidges to receive education, programs, congregational setting, rehabilitation, religious services. On visitation, displays plaintiff to his loved ones handcuffed behind his back, removing such through a slot. Visitation held

22

inside of a dog like cage, with no ability to embrace or kiss one another.

89. For two 1/2 Consecutive years, keeping plaintiff sandwhiched between numerous level 1-5 office of mental health patients who tortured him as well as others and staff. Throwing feces, urine, defecating in the shower stalls, Setting cell on fire- smoking plaintiff out, Flooding his cell with toilet water, banging on his cells walls continually. The entire Confinement being totally different and opposite from normal Conditions of prison

<u>EQUAL PROTECTION VIOLATIONS</u>

90. Griffin, Deno, Chappius, Venettozzi, Keller, Kirkpatrick and Bellamy either violated or ratified violations of his equal protection of the law by singling plaintiff, out of Seven inmates on the ILC, for filing a lawful greivance by committee, to retaliate on him sending a message to others to refrain from filing

91. Housing him punitively Confined in S.H.U. although they house "inmates restricted from Communication with the general population for security safety" wether in S.H.U. or alternative houses- on non-punitive status, affording then all of their rights, privilidges, personal property, out of cell time etc., pursuant to D.O.C.C.S. directives 4933 & 4948, and having an alternative unit at Elmira, housing said inmates

92. An inmate J. Santana #08A3256 who was also Ad-Seg at Elmira S.H.U. in 2015-16 - Chappius & Keller Moved him to the Alternative Unit for "restricted from Communication with inmates in general population for security reasons" in or around May-July 2016 provided him all of his rights & privilidges

23

though he was Ad-Seg.

93. Housing him disciplinarily without him having a misbehavior report or hearing & sanction, although no other other inmates are disciplinary confined here except by a misbehavior report, hearing and disposition of sanctions.

No other inmates in D.O.C.C.S. (over 50,000) are disciplinarily confined in S.H.U. for their criminal convictions & sentences, Prior Misbehavior reports & consumated sanctions, and previous exonerated charges - being relabled years later - yet the defendants disciplinary confined plaintiff by relabling & reiterating his priors.

94. Transfering plaintiff via unorthodox means outside of D.o.c.c.s. transfer directives without his medical records although all inmates are transfered with their medical records and in accordance with D.o.c.c.s. transfer directives with a transfer order. Deprived plaintiff of medical treatment for longer than a four month period

RETALIATION

95. Chappius aided & abetted Griffin, by fulfilling Griffins will & threat to take away plaintiffs visits because plaintiff filed a greivance about Sgt. Confortis violent conduct endangering families & inmates on a visit room at Green-Haven, by suspending his fiancés visitation, on two seperate occassions, for two periods of one (1) year individually. On June 1, 2015 and on Feb. 6, 2016.

96. During both incidents, Chappius had neither investigated the allegations, viewed the visit room video recording footage.. And he deliberately forwarded the notice of suspensions to wrong addresses to deprive plaintiff & his fiance

24

their facility directive & Regulations of New York State statutes rights to appeal, and, his suspension sanction fines, far exceeded the New York State statute & D.O.C.C.S. directive, penalty charts corresponding to the alleged incidents.

I Amin Bodier declares under the penalties punishable by perjury under the United States and New York State Constitutions and Statutes, that I have read the foregoing facts, know upon personal knowledge that they are true, unless made upon information and belief, both of which I beleive to be true.

DATED: May 2, 2018

x _Amin Bodier_
Amin Bodier Plaintiff Pro Se

## CAUSES OF ACTION - FIRST CAUSE

Defendants Griffin, Demo and John Doe Retaliated against plaintiff for exercising his Freedom of Speech, Performing job duties - filing a greivance in violation of the 1st And 14th Amendments of the United States Constitution, & New York Const. Art 1 §9

## SECOND CAUSE OF ACTION

Defendants Griffin, Demo, Kirkpatrick, Keller, Scranton & Chappius retaliated against plaintiff for filing a lawful greivance by punitively confining him and depriving him of Due Process of law in violation of the 1st & 14th Amendments of the United States Constitution & New York Const. Art. §1 §9

## THIRD CAUSE OF ACTION

Defendants Chappius, Keller, Venettozzi & Bellamy unconstitutionally and systemically confined plaintiff arbitrarily using Administrative Segregation as a Pretext for

25

Punitive Confinement, and Sanctioning him without charge or a disposition, depriving him of all rights and privilidges, in Violation of the 14th Amendment of the U.S. Const. and New York Const. Art. 1 § 1

FOURTH CAUSE OF ACTION

Defendants Griffin, Demo, Kirkpatrick, Keller, Chappius, Venettozzi and Bellamy singled plaintiff out for injury, because he filed lawful greivances - and denied him several rights and privilidges afforded to prisoners so confined as he is, in violation of the Equal Protection Clause of the 14th Amend. of the U.S. Const. and New York Const. Article 1 § 11

FIFTH CAUSE OF ACTION

Defendants Griffin and Chappius being Cruel and Unusual, Punished plaintiff by depriving him access to Medical treatment, observation and ability to record his medical status, in violation of the 8th Amend. of the U.S. Const. and New York Const. Art. 1 § 5

SIXTH CAUSE OF ACTION

Defendants Griffin, Demo, Keller, Kirkpatrick, Chappius, Venettozzi, & Bellamy did subject plaintiff to Atypical and Significant hardship, confining him under raw conditions in extreme Isolation, punitively Confined in excess of three Consecutive years, without affordance of Due Process of Law in violation of the 14th Amend. of the U.S. Const. and New York Const. Art. 1 § 1.

SEVENTH CAUSE OF ACTION

Defendants Griffin and Chappius did retaliate on plaintiff for his filing a

26

lawful greivances by transfering him hundreds of miles away from his loved ones, terminating his visits and suspending his visits, in violation of the 1st & 14th Amend. of the U.S. Const. and New York Const. Articles 1 §1 & 1 §9

REQUESTS FOR RELIEF

Plaintiff respectfully requests this court to render Orders to:

A) Declare that the defendants acts, policies, practices and/or ommissions has constituted the violations of the U.S. Const. Amends, and New York Const. Articles as stated above

B) Issue orders of injunctions including but not limited to

1. Ordering defendants Venettozzi, Chappius, Bellamy and their agents to permanently discontinue the use of administrative segregation as a pretext for punitive confinement and restore to Ad-Seg inmates - their personal properties, rights and privilidges

2. Reverse and expunge from plaintiffs institutional records, all documents created in the Ad-Seg hearing & determination rendered Aug. 21, 2015 and restore plaintiff to all rights & privilidges he enjoyed prior to the defendants retaliatory actions.

3. Order the defendants to refrain from taking any further retaliation against plaintiff either directly or through their brethen colleagues and/or subordinates

C) Order the defendants to pay the cost and reasonable Attorney fees, expenses in accord with applicable statutes, 28 U.S.C. §§ 1915, 2414; 42 U.S.C. §§ 1988, & 3613 - including pro-se prisoner litigation fees incurred under

27

the equal labor laws

D) Award compensatory damages to be paid jointly or severally by the defendants in the amount of One (1) million dollars in U.S. Currency, and Punitive damages to be paid jointly and/or severally by the defendants in the amount of one (1) million dollars in U.S. Currency - to the plaintiff.

I Amin Booker affirms under the penalty of perjury that I have not filed any state or federal action with the above stated causes of action

Dated: May 2, 2018

Truly + Amin Booker
Amin Booker Pro-se

28

1. Denied Fair trial : Character Evidence Rule 404 (a) (1)
Inadmissible
Hearsay Evidence Rule 802 outside of Hearsay exception 804 (b)
unidentified Declarants
   1. Someone received C.I. info letters    (no notice of unavailabity was established for declarants)

   2. Unidentifieds Declarant said me & others linked at locations, planned Attica

   3. No foundation for info

   4. Testimony of Chuttry non defendant, non-party

   5. Undermined fairness of fact finding Process

      a) Shackled, unknown reason, Juror observed

      b) Denied right to Sidebar

      c) Inadmissible C.I. data admitted w/out no foundation - ten Prevent Adequate Cross exam. Hadn't been

      d) afforded opp. to cross examine Proffered evid. 807

2. Summary Judg. First Amend Rights, to Services & meals.

   a) Heightened burden

   b) access to Iman, ignored

   c) Fell short of valid legitimate where gave other services

   d) Meals being done by staff & inmates

   e) R.L.U.I.P.A.

3. Motion To Dismiss Due Process claim as relevant to Retaliation. Confined to S.H.U. in Retaliation

4. Motion for Sanctions : Factual Contentions had no evidentiary support Rule 11 (b) Presentations To Court Pleading, written Motion,

   a) Subd. (3) Factual Contentions have evidentiary Support

   b.) Subd (4) the Denials of factual contentions are warranted on evidence

   Summ Judg motion, five instances where had no factual evid. Supp., and 7 instances motion delta motion

   "denied factual contentions by Plantiff that wasn't warranted on the evidence"

Amin Booker # 98A6245

Elmira Correctional Facility

P.O. Box 500

Elmira, N.Y. 14902

May 2, 2018

ı Pro-Se Filing Clerk

To: Hon. Nelson S. Román

United States District Court

300 Quarropas Street

White Plains, N.Y. 10601

RE: Booker v Griffin et al Docket No. 16-CV-00072 (NSR)

Dear Sir,

Will you please file the enclosed with honorable Nelson S. Román at your earliest Convenience.

Dear Judge Román,

enclosed is plaintiffs Amended Complaint in compliance with and pursuant to Fed. R. Civ. P. 15 (a)(2), in the above captioned matter. Thank you respectfully. (2 copies)

Truly x Amin Booker

AFFIDAVIT OF SERVICE: Amin Booker hereby declares under the penalty of perjury that on May 3, 2018 I served a true & exact copy of the Amended Complaint, by delivering the same in a properly sealed envelope, postage Pre-paid into the hand of Correction officer responsibility afor U.S. Postal Service mail at the above location, addressed to: Yan Fu, Assistant Attorney General, of Counsel, office of the Attorney General, 120 Broadway, New York, N.Y. 10271-0332

Truly x Amin Booker

**ELMIRA CORRECTIONAL & RECEPTION CENTER**
**P.O. BOX 500**
**ELMIRA, NEW YORK  14902-0500**

Amin Booker # 98A6245





ELMIRA
CORRECTIONAL
FACILITY

Elmira

Correctional Facility

neopost
05/04/2018
US POSTAGE
FIRST-CLASS MAIL
$002.05⁰
ZIP 14901
041L11251115

RECEIVED
MAY 07 2018
U.S.D.C.
WP

Pro- Se Unit Clerk of Court

c/o Hon. Nelson S. Román

United States District Court

300 Quarropas Street

White Plains, N.Y. 10601