USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/21/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMIN DOSHAWN BOOKER,

                          Plaintiff,

-against-

THOMAS GRIFFIN, *Superintendent of Green Haven Facility;* E. DEMO, *DOCCS Investigator;* Paul Chappius, Jr., *Superintendent Elmira Facility;* G. KELLER, *Captain at Elmira;* M. KIRKPATRICK, *Superintendent of Clinton;* John Doe #1, *Confidential Informant;* JOHN DOES #2–3., *Correction Officers at Green Haven;* SGT. ISAACS, LT. SCRANTON; CORRECTION OFFICER SEARS; KAREN BELLAMY, *Central Office Committee Director;* DONAL VENNETTOZZI, *Director of SHU,*

                          Defendants.

No. 16-CV-00072 (NSR)
ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Amin Doshawn Booker commenced this *pro se* action pursuant 42 U.S.C. § 1983, alleging violations of his First, Eighth, and Fourteenth Amendment rights in connection with his incarceration at Green Haven and Elmira Correctional Facilities. (*See* Second Am. Compl. ("Compl."), ECF No. 104). Specifically, Plaintiff raises various challenges to his placement in administrative segregation, the suspension of his visitation privileges, and the denial of appropriate medical care during certain period of his incarceration.

Presently before the Court is Plaintiff's motion for a preliminary injunction. (Pl.'s Mot. for Prelim. Inj. ("Pl.'s Mot."), ECF No. 107). Defendants oppose Plaintiff's motion. (Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Preliminary Inj. ("Defs.' Opp'n"), ECF No. 112).

For the reasons that follow, Plaintiff's request for a preliminary injunction is DENIED.

**BACKGROUND**

The facts are set forth in the Court's previous Opinion, familiarity with which is presumed. *Booker v. Griffin*, 16-CV-00072(NSR), 2018 WL 1614346, at *1 – 2 (S.D.N.Y. Mar. 31, 2018). The procedural history is described below.

Plaintiff commenced the present action on January 4, 2016 for recovery under 42 U.S.C. § 1983 for violations of his First, Eighth, and Fourteenth Amendment rights. (ECF No. 2.) Defendants moved to dismiss that complaint on January 6, 2017 (ECF No. 46), and Plaintiff filed a cross-motion for summary judgment on his due process claims. (ECF No. 52.) The Court granted the motion in part and denied the motion in part. (ECF No. 80.) The Court denied the motion to dismiss Plaintiff's claims that he was not afforded proper process before being subjected to indefinite administrative segregation and granted Defendants' motion to dismiss Plaintiff's other claims. The Court also denied Plaintiff's cross-motion for summary judgment. However, the Court also granted Plaintiff leave to replead.

On May 7, 2018, Plaintiff filed an amended complaint (ECF No. 83), and he filed a Second Amended Complaint, the operative complaint, on September 17, 2018. (ECF No. 104.) By memorandum endorsement, the Court granted Defendants requested to file a motion to dismiss. (ECF No. 105.) Plaintiff moved for a preliminary injunction on October 29, 2018 (ECF No. 107.) Specifically, Plaintiff requests that the Court order Defendants to (1) discontinue his confinement in SHU; (2) transfer him to "a New York hub correctional facility"; (3) reinstate his approval status for the Family Reunion Program; and (4) discontinue retaliation against Plaintiff and any inmate who testified or provided affidavits on Plaintiff's behalf. All motion to dismiss documents were filed on December 20, 2018, per the briefing schedule set by this Court. (ECF

Nos. 119 – 25.)

## LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008). In the Second Circuit, a party seeking a preliminary injunction "must demonstrate that it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party." *Mullins v. City of New York,* 626 F.3d 47, 52–53 (2d Cir. 2010); *see also Lynch v. City of New York,* 589 F.3d 94, 98 (2d Cir. 2009).

Where a party seeks a mandatory injunction "altering, rather than maintaining, the status quo," such as in this case, that party "must meet [a] more rigorous standard." *Almontaser v. N.Y. City Dep't of Educ.,* 519 F.3d 505, 508 (2d Cir. 2008) (internal alterations omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 34 (2d Cir. 1995) ("[W]e have required the movant to meet a higher standard where ... an injunction will alter, rather than maintain, the status quo, ..."). The moving party must establish a " 'clear' or 'substantial' likelihood of success," or show that "extreme or very serious damage" would result in the absence of preliminary relief. *Tom Doherty Assocs.,* 60 F.3d at 34.

## ANALYSIS

Plaintiff failed to establish that he would suffer irreparable harm or extreme damage without the requested preliminary injunctive relief and his motion must be denied. Assuming Plaintiff had met his burden on this first element, his motion would still be denied; he cannot

show that there is a substantial likelihood he will succeed on the merits or that there are sufficiently serious questions going to the merits and the balance of hardships tips decidedly in his favor.

I.     **Extreme Irreparable harm**

An "irreparable injury means injury for which a monetary award cannot be adequate compensation." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). The irreparable injury must be actual and imminent, not remote or speculative. *See Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999).

Plaintiff has failed to show that he will suffer irreparable harm, and certainly not extreme harm, if injunctive relief is not granted pending the resolution of this lawsuit. Plaintiff states that without the preliminary injunction he will suffer irreparable harm in the forms of violations of New York and federal law, physical and mental health deterioration, deprivation of family visits, loss of access to programs, and difficulty in accessing certain personal items. However, Plaintiff does not provide any support for these harms beyond his conclusory statement.[1] *See Lopez v. McEwan*, No. 08-CV-678(JCH), 2010 WL 326206, at *11 (S.D.N.Y. Jan. 22, 2010) (denying the plaintiff's motion for preliminary injunction to because the plaintiff was asking the court to compel the "DOC to reclassify him to fit his idea of the best conditions of confinement"). He also does not allege that he is enduring particularly detrimental conditions in SHU or support his claims of irreparable harm with any other facts. *See Fludd v. Fischer*, No. 10-CV-6603, 2011

---

[1] Moreover, many of these harms are not irreparable for the purposes of a preliminary injunction analysis. *See Baird v. Hodge*, 605 F. App'x 568, 570 (7th Cir. 2015) (denying the plaintiff's motion for a preliminary injunction to require that he be transferred because the plaintiff failed to show irreparable harm); *Jackson v. Herr*, No. 15-CV-6531L, 2016 WL 538838, at *2 (S.D.N.Y. Feb. 11, 2016) (holding that loss of visitation rights was not irreparable harm); *Salvatierra v. Connolly*, No. 09-CV-3722(SHS)(DF), 2010 WL 5480756, at *24 (S.D.N.Y. 2010) (denying the plaintiff's request for a preliminary injunction to transfer him to another facility because, in part, the alleged harm of lack of access to legal treatment and fear of retaliation, was not irreparable harm).

4

WL 2681236, at *3 (W.D.N.Y. July 8, 2011) (holding that the plaintiff's allegations that his administrative segregation could result in his death were merely conclusory and that the plaintiff therefore failed to allege irreparable harm); *Vogelfang v. N.Y. State Dep't of Corr.*, No 10-CV-3827(JGK), 2010 WL 3895493, at *1 (S.D.N.Y. Oct. 4, 2010) (denying a plaintiff's request for a preliminary injunction to stop her confinement to SHU because she had not established a likelihood of irreparable harm). Rather, Plaintiff alleges that the harms he is enduring incidental to his administrative segregation are irreparable and that he should be granted immediate relief. This bare allegation is insufficient to establish irreparable harm and also fails to meet the more rigorous standard, that Plaintiff will suffer extreme or very serious damage absent the preliminary injunction.

## II. Substantial likelihood of success[2]

Even if the Court held that Plaintiff established irreparable harm, the Court would still deny his preliminary injunction motion because he cannot show that he has a substantial likelihood of succeeding on the merits.

To succeed on a § 1983 claim for a constitutional violation, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.").

---

[2] The Court does not address Plaintiff's Eighth Amendment claim here because it is not relevant to his request for a preliminary injunction. To the extent that Plaintiff claims that his confinement to SHU violates the Eighth Amendment, the Court would find that he has not presented a substantial likelihood that he would succeed on that claim.

*A. Due Process*

Plaintiff alleges that his due process rights were denied surrounding the circumstances of his confinement to SHU.

Courts engage in a two-step analysis when resolving procedural due process claims. To state a due process claim, a plaintiff must show "(1) the existence of a property or liberty interest that was deprived; and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). To implicate a liberty interest, inmates must show that the confinement at issue creates an "atypical and significant hardship in relation to ordinary incidents of prison life" and that the state has granted inmates a protected liberty interest in remaining free from that type of confinement. *See Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996). Once an inmate establishes that she has been deprived of a protected interest, she must show that she has been deprived of this interest without sufficient process. For administrative proceedings, due process requires that an inmate is presented with "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Wheeler-Whichard v. Roach*, 468 F. App'x 28, 30 (2d Cir. 2012); *see Taylor v. Rodriguez*, 238 F.3d 188, 192 (2d Cir. 2001). After an inmate has been confined to administrative segregation, prison officials must engage in "some sort of periodic review of the confinement" to confirm that the inmate remains a security risk. *Proctor v. LeClaire*, 715 F.3d 402, 413 (2d Cir. 2013).

Plaintiff argues that he has been confined to SHU after a disciplinary proceeding, of which he did not get adequate notice, indefinitely in violation of his due process rights. However, from documents surrounding Plaintiff's pre-confinement hearing and referenced in his Second Amended Complaint, it is clear that the hearing was administrative, not disciplinary, and

Plaintiff likely received the required due process for administrative segregation.[3] Plaintiff was served with a recommendation for administrative segregation on April 25, 2015. (Compl. ¶ 45); (Keller Decl. Exs. A & B, ECF No. 113.) This recommendation provided Plaintiff with notice that prison officials were concerned that Plaintiff had influence with the Blood gang within the facility and that he was a threat to the safety and security of the facility. (Compl. ¶ 46); (Keller Decl. Exs. A.) At the hearing following the recommendation, Plaintiff worked with an appointed assistant to present documentary evidence, call his own witnesses, and ask questions of other witnesses. (Compl. ¶ 50); (Keller Decl. ¶ 11.) Based on the evidence, the hearing officer agreed with the recommendation and placed Plaintiff in administrative segregation.[4] (Keller Decl. ¶ 8.) Plaintiff has also received multiple reviews since his administrative segregation and has not been released from segregation because prison officials have determined that he continues to present a threat to the safety and security of the facility. (Counsel Decl. Ex. B.) Plaintiff received notice, the opportunity to present his account, and periodic reviews of his administrative segregation as required by due process. Because Plaintiff is requesting a change in the status quo through a preliminary injunction, he is held to a higher standard of proof and must show a substantial likelihood of the success on the merits. *Vox Amplification Ltd. v. Meussdorffer*, 50 F. Supp. 3d 355, 370 (E.D.N.Y. 2014). Plaintiff has failed to meet this standard.

### B. Retaliation

---

[3] Even if the Court found that Plaintiff was subject to a disciplinary rather than an administrative proceeding, he still would have received the due process required for disciplinary segregation. To satisfy due process for disciplinary proceedings, the inmate must receive (1) advance written notice of the charges; (2) an opportunity to call witnesses and present documentary evidence; and (3) a written statement by the hearing officer of the evidence relied upon and the reasons for the disciplinary action. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). Plaintiff was afforded each of these elements at his hearing.

[4] There is no indication that the hearing officer relied on past expunged misbehavior reports in making his decision. Rather, the record indicates that he relied on the totality of the evidence presented by Plaintiff and by the prison officials. Plaintiff's allegations on this issue are conclusory and unlikely to succeed.

To succeed on a First Amendment retaliation claim, a plaintiff must establish that (1) the speech or conduct in question was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015).

Plaintiff claims that he was retaliated against for filing two grievances as the ILC secretary against Defendant Griffin and Sergeant Conforti in March 2015. Grievances are a form of speech protected by the First Amendment, and so are protected activity. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). Turning to the second element, Plaintiff cites to case law indicating that retaliatory transfers are unconstitutional. These statements would likely be insufficient to survive a motion to dismiss; they are mere summaries of the law and do not even amount to conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Even if the Court were to determine that Plaintiff provided sufficient factual support for his claim that Defendants took adverse action against him, it is unlikely that the Court would find a causal connection between his protected speech and the adverse actions. Courts consider several factors when determining whether causal connection exists between the protected activity and the alleged retaliatory conduct: (1) temporal proximity between the inmate's protected activity and the defendant's adverse action; (2) the inmate's prior disciplinary record; (3) the outcomes of hearings regarding any allegedly retaliatory charges; and (4) any statements the official makes about his motive. *Davidson v. Bartholome*, 460 F. Supp. 2d 436, 444 (S.D.N.Y. 2006). Cases in which the court accepts mere temporal proximity as evidence of a causal connection hold that the temporal proximity must be very close. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001). "[T]he Second Circuit has instructed district courts to examine the retaliation claims of prisoners with particular care, since, 'Retaliation claims by

8

prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike.' " *Davidson*, 460 F. Supp. 2d at 444 (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

There is some temporal proximity between Plaintiff's grievances in March 2015 and his transfer from Green Haven in late April to early May, and Plaintiff also alleges that at a meeting on April 21, 2015, Defendant Griffin reprimanded Plaintiff for complaining about Defendant Griffin to his boss and told Plaintiff that Plaintiff would be transferred. (Compl. ¶ 25 – 30); (Keller Decl. Ex. A.) However, temporal proximity and statements by officials are only some of the factors to be considered, and these allegations are insufficient to show a substantial likelihood that Plaintiff would prevail in showing a causal connection. Plaintiff has a disciplinary record dating back to 2010 involving serious offenses such as drug and weapon possession, and the hearing officer at Plaintiff's administrative segregation hearing agreed that Plaintiff presented a risk to the security of the facility. These facts, coupled with the particular care courts must exercise when analyzing inmate retaliation claims, could lead a court to conclude that there is not a causal connection between the protected conduct and Defendants' actions.

Accordingly, because a court would probably determine that Plaintiff has not met the second or third elements of a retaliation claim, Plaintiff has failed to establish a substantial likelihood of success.

### III. Balance of hardships

Were the court to hold that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, the balance of hardships does not tip decidedly in

Plaintiff's favor. The state has a substantial interest in maintaining institutional security. *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("[M]aintaining institutional security and preserving internal order and discipline are essential goals . . . ."). "Institutional safety and security are perhaps a prison facility's most important considerations." *Proctor v. LeClaire*, 846 F.3d 597, 610 (2d Cir. 2017). Administrative segregation of those who pose a safety risk is a vital tool used to maintain order and security within correctional facilities. *Id.* ("The state's interest in flexible [administrative segregation] procedures—maintaining institutional security—is substantial.") Requiring Defendants to release Plaintiff from administrative segregation who has been determined to pose an ongoing security threat would jeopardize the security of the facility and cause severe hardship to Defendants. Plaintiff is certainly correct that it is in the public interest to require correctional officers to obey the law. However, Plaintiff has not demonstrated that he is likely to prevail on his claims that Defendants violated the law. Because of the substantial weight of Defendants' interest in security, therefore, the balance of hardships in this case tips in the Defendants' favor.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is DENIED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 107 and to mail a copy of this Opinion to *pro se* Plaintiff and file proof of service on the docket.

Dated: December 21, 2018
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge