UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/7/19

AMIN DOSHAWN BOOKER,

                              Plaintiff,

        -against-

THOMAS GRIFFIN, *Superintendent of Green Haven Facility;* E. DEMO, *DOCCS Investigator*; PAUL CHAPPIUS, JR., *Superintendent Elmira Facility*; G. KELLER, *Captain at Elmira*; M. KIRKPATRICK, *Superintendent of Clinton*; JOHN DOE #1, *Confidential Informant*; KAREN BELLAMY, *Central Office Committee Director*; DONAL VENNETTOZZI, *Director of SHU,*

No. 16-CV-0072 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

        Plaintiff Amin Doshawn Booker commenced this *pro se* action pursuant 42 U.S.C. § 1983, alleging violations of his First, Eighth, and Fourteenth Amendment rights in connection with his incarceration at the Green Haven Correctional Facility ("Green Haven") and Elmira Correctional Facility ("Elmira").  (*See* Second Am. Compl. ("SAC"), ECF No. 104.) Specifically, Plaintiff alleges that Defendants retaliated against him, and he also raises various challenges to his placement in administrative segregation and the denial of appropriate medical care during certain periods of his incarceration.

        Presently before the Court is Defendants' partial motion dismiss the SAC pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim.  (ECF No. 119.)

        For the reasons that follow, Defendants' partial motion to dismiss is GRANTED.

# BACKGROUND

## I.    Factual Background

The following facts are derived from the SAC and are presumed to be true for the purposes of this motion.

In 2015, Plaintiff, then an inmate at the Green Haven, was elected Representative Secretary of the Inmate Liaison Committee ("ILC").  (SAC ¶ 14.)  Between January and March of that year, there were corruption issues with the corrections officers at Green Haven, and the ILC was receiving rumors that Defendant Griffin, the Green Haven Superintendent, was instructing officers to harm inmates.  (*Id.* ¶¶ 17 – 18.)  The ILC requested a meeting with the Department of Corrections and Community Supervision ("DOCCS") Commissioner Anthony Annucci to address these rumors. (*Id.* ¶ 18.)

However, issues with officers at Green Haven continued.  A few days after the ILC submitted their proposed agenda for their requested meeting with Commissioner Annucci, Plaintiff heard that a DOCCS sergeant violently slammed a telephone into pieces in the family visit room.  (*Id.* ¶¶ 19 – 20.)  On April 9, 2015, Defendant Griffin held an ILC meeting about this and other incidents; he denied their request to meet with the Commissioner and, of the incident with the phone, said that it had been dropped by mistake.  (*Id.* ¶ 23.)  Four days later, Plaintiff was told that he would be transferred from E-block to F-block, and he was removed from his position on the ILC.  (*Id.* ¶ 24.)

Around April 21, 2015, Plaintiff was taken to a meeting with Defendant Griffin.  (*Id.* ¶¶ 25 – 26.)  Plaintiff told Defendant Griffin that he could not sit with his hands cuffed behind him because he had pulled his back while lifting weights.  (*Id.* ¶ 26.)  Defendant Griffin proceeded to accuse Plaintiff of "trying to go above [his] head" for trying to arrange for the ILC meeting with

the Commissioner and said that his brother was a DOCCS commissioner.  (*Id.* ¶¶ 27 – 28.)

Defendant Griffin further threatened to send Plaintiff to a facility in upstate New York, away

from his family, and warned that he could have Plaintiff in the special housing unit ("SHU")[1]

"with a push of a button."  (*Id.* ¶ 29.)  Later that night, Defendant Demo, a DOCCS investigator,

told Plaintiff he was investigating an alleged incident of excessive force.  (*Id.* ¶ 31.)  Plaintiff

replied that he was not aware of the incident, and Defendant Demo told him Defendant Griffin

had said Plaintiff was an "uppity boy."  (*Id.*)

The next day, on April 22, 2015, Plaintiff was abruptly transferred to Elmira.  (*Id.* ¶¶ 32 –

34.)  Plaintiff alleges that Defendants Griffin and Chappius, longtime friends, conspired to

transfer Plaintiff to Elmira without any of his personal property or records.  (*Id.* ¶ 38.)  Shortly

thereafter, Plaintiff was served with an administrative segregation recommendation, authored by

Defendant Demo in conjunction with Defendant Griffin, falsely accusing Plaintiff of attempting

to organize an inmate demonstration and being influential within a gang. (*Id.* ¶¶ 36 – 37 & 45.)

The segregation recommendation included charges of which he had been exonerated and "[a]

number of misbehavior reports [Plaintiff had] never received."  (*Id.* ¶ 45.)  Defendants Griffin's

and Demo's actions were in retaliation for Plaintiff's grievances.  (*Id.* ¶ 44.)

Following the segregation recommendation, on May 1, 2015, Defendant Kirkpatrick

commenced an administrative segregation hearing against Plaintiff. (*Id.* ¶ 47.)  After Plaintiff

objected to the recommendation, both Defendants Demo and Griffin testified via telephone on

May 7, 2015 and May 12, 2015, respectively.  (*Id.* ¶ 47 – 48.)  The testimony of each Defendant

was inconsistent with Defendants' written recommendation, prompting Plaintiff to request an

---

[1] SHU confinement includes segregation for disciplinary, detention, protective, or administrative purposes. *See* 7 NYCRR § 301.2– 301.4. Accordingly, this Court uses the terms "administrative segregation" and "SHU" interchangeably throughout this Opinion.

adjournment of the hearing in order to obtain documents and interview witnesses. (*Id.* ¶ 49 – 50.) Defendant Kirkpatrick then allegedly violated DOCCS directives and state law by intentionally prolonging Plaintiff's document requests and granting numerous requests for extensions from Defendants. (*Id.* ¶ 54.)

On June 4, 2015, Defendants Chappius and Griffin directed a lieutenant to "lure" Plaintiff into a telephone conference with someone positing as a "Commissioner Gore." (*Id.* ¶ 56.) The individual on the phone identified himself as "Commissioner Gore" and asked Plaintiff about his grievances against Defendant Griffin. (*Id.* ¶ 57.) Plaintiff then discussed his grievances relating to the administrative hearing with the individual he believed to be "Commissioner Gore." (*Id.*) Plaintiff later wrote to Commissioner Gore in Albany and learned that he had not actually spoken to Commissioner Gore over the phone. (*Id.* ¶ 58.)

While the administrative segregation hearing was adjourned, Defendant Kirkpatrick was transferred to another DOCCS facility, and so Defendant Keller was assigned to "restart" the hearing. (*Id.* ¶ 60.) A new hearing was eventually reconvened on July 7, 2015. (*Id.*) Defendant Keller denied Plaintiff's request for documents, did not allow Plaintiff to question witnesses, and generally conducted the hearing in a biased manner (*Id.* ¶ 60 – 61.) Defendants Griffin and Demo, who again testified at the hearing, provided testimony that was significantly different than their previous statements before Defendant Kirkpatrick. (*Id.* ¶ 61.)

Defendant Keller eventually reached a disposition on August 21, 2015, agreeing with Defendant Demo's recommendation and sentencing Plaintiff to indefinite administrative segregation. (*Id.* ¶¶ 65 & 73.) In reaching this determination, Defendant Keller relied on an anonymous source without independently assessing that source's credibility. (*Id.* ¶ 73.)

Defendants Kirkpatrick, Keller, Chappius, and Venettozzi[2] confined or condoned Plaintiff's administrative confinement based on false charges that he had ordered the death of a corrections officer in connection with his alleged activity with the Bloods gang, had organized a secret Muslim society, and had planned a facility work stoppage. (*Id.* ¶¶ 65 – 66.) Additionally, Plaintiff alleges that Defendants Griffin, Demo, Chappius, and Keller allowed previously expunged charges to remain in his record. (*Id.* ¶ 67.)

Plaintiff repeatedly voiced his concern about his segregation hearing to Defendant Chappius, a Superintendent at Elmira. (*Id.* ¶ 72.) Defendant Chappius, however, did not address Plaintiff's concerns, telling him: "I am going with Griffin, whatever he wants. . . I am not reversing the determination. These are your problems, I sleep well at night." (*Id.*) Plaintiff then appealed the disposition of his administrative hearing to the DOCCS Director of Special Housing, Defendant Venettozzi, who affirmed the disposition on November 6, 2015. (*Id.* ¶ 83.) Plaintiff alleges that Defendant Venettozzi maintains a policy of using administrative segregation as a pretext for punitive confinement. (*Id.* ¶¶ 75 – 76.)

Separately from the concerns raised in connection with the administrative confinement hearing, Plaintiff also alleges that Defendants Griffin and Chappius intentionally transferred Plaintiff to Elmira without his medical records, even though Defendant Griffin knew that Plaintiff was suffering from a back injury. (*Id.* ¶ 86 – 87.) Because his medical records were not transferred in a timely manner, Plaintiff was unable to receive his prescription allergy medication and he suffered allergy symptoms, including swollen glands, swollen eyes, nasal congestion, sneezing, nosebleeds, nose sores, blisters, and severe constipation. (*Id.* ¶¶ 88 – 89.) Moreover,

---

[2] In the caption, this Defendant's name is spelled "Vennettozzi." However, throughout briefing papers and in the 2018 Opinion, this Defendant is referred to as "Venettozzi." Throughout this Opinion, the Court will use the latter spelling.

Plaintiff experienced severe back pain due to his weightlifting injury and, due to lack of dental care complications which led to the deterioration and eventual dislodgement of one of his teeth. (*Id.* ¶ 89.)

## II.     Procedural Background

Plaintiff commenced the present action pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, various violations of his First, Eighth, and Fourteenth Amendment rights by officials at Green Haven and Elmira.  (ECF No. 2.)  Defendants filed a motion to dismiss Plaintiff's Complaint on January 6, 2017, arguing that the Court lacked jurisdiction to adjudicate Plaintiff's due process claims pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and that Plaintiff had failed to state a claim for any other constitutional violation. (ECF No. 46.)  Plaintiff opposed Defendants' motion to dismiss and filed a cross-motion for summary judgment on his due process claims. (ECF No. 52.)  The Court's March 31, 2018 Opinion ("2018 Opinion") on the first motion to dismiss is described in relevant part below.  After the Court's 2018 Opinion, Plaintiff filed an Amended Complaint on May 7, 2018.  (ECF No. 83.)  Four months later, he filed the SAC.  Defendants filed a partial motion to dismiss Plaintiff's SAC on December 20, 2018.

## III.    2018 Opinion

In a March 31, 2018 Opinion ("2018 Opinion"), the Court granted Defendants' motion in part and denied the motion in part; it also denied Plaintiff's cross-motion for summary judgment. The Court's 2018 Opinion is summarized below in relevant part.

### A.  Due process[3]

---

[3] The Court recognizes, as it did in its 2018 Opinion, that a stricter procedural due process standard may apply because Plaintiff plausibly alleges that Defendants mislabeled his confinement as administrative when it was in fact punitive. *Booker v. Griffin*, No. 16-cv-0072(NSR), 2018 WL 1614346, at *9 (S.D.N.Y. Mar. 31, 2018).  This stricter standard will apply to those due process claims that are not dismissed by this Opinion.

The Court held that Plaintiff's prolonged administrative confinement deprived Plaintiff of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *Booker v. Griffin*, No. 16-cv-0072(NSR), 2018 WL 1614346, at *8 (S.D.N.Y. Mar. 31, 2018). In determining whether Plaintiff stated a facially plausible claim that he was not afforded constitutionally sufficient process, the Court held that Plaintiff may be entitled to stricter due process protections because he plausibly alleged that Defendants mislabeled his confinement as administrative when it was in fact punitive. *Id.* at *9.

Applying this stricter standard, the Court held that, generally, Plaintiff stated a claim he was denied appropriate process. The activity with which he was charged at the hearing was not outlined "with any specificity" in the segregation recommendation. Moreover, Plaintiff alleged that Defendant Keller did not permit him to call any witnesses or present any documentary evidence in his defense. Plaintiff also plausibly alleged that Defendant Keller's ruling was not supported by reliable evidence. *Id.* at *9 – 10.

However, the Court dismissed Plaintiff's due process claims against certain Defendants. The Court held that Defendant Venettozzi was entitled to qualified immunity from Plaintiff's claims that he violated Plaintiff's due process rights by failing to remedy Plaintiff's placement in administrative confinement. *Id.* at *11 – 12. Qualified immunity also shielded Defendants Griffin and Demo from Plaintiff's claims that they fabricated charges against Plaintiff and led to his placement in administrative segregation in violation of the due process clause. *Id.* at *12.

**B. First Amendment retaliation claims**

Defendants Griffin and Demo were not entitled to qualified immunity, however, from Plaintiff's First Amendment retaliation claims because it was clearly established at the time of Defendants' alleged actions, inmates had a protected right to assume a leadership role in filing a

broad grievance that affected many inmates.  *Id.* at *13.

### C.  Deliberate indifference to medical needs claim

Although the facts in the Complaint plausibly alleged that Plaintiff had chronic and substantial pain that disrupted his daily life, he did not allege that either Defendants Griffin or Chappius were aware of his serious medical needs.  Therefore, the Court dismissed this claim with leave to replead.  *Id.* at *16.

### D.  Equal protection claims

Plaintiff failed to plausibly allege that Defendants violated the Equal Protection Clause because he did not identify a similarly situated comparator or plausibly allege that he was treated differently to that comparator.  The Court dismissed the claim and granted Plaintiff leave to replead.  *Id.* at *18.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.  In considering a 12(b)(6) motion, the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (internal quotation marks omitted). Nor must the Court credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *Kleinman v. Elan Corp., plc.* 706 F.3d 145, 152 (2d Cir. 2013).

As to a motion brought under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "[T]he court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). Though a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, [it] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

Finally, "where, as here, a plaintiff proceeds *pro se*, the court must 'construe [] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s].' "

*Askew v. Lindsey*, No. 15-CV-7496(KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016)

(alterations in original) (citing *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)). Yet,

" 'the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from

compliance with relevant rules of procedural and substantive law.' " *Id.* (quoting *Bell v. Jendell*,

980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

## DISCUSSION

Defendants move to dismiss the following claims in from the SAC: (1) the claims that

Defendants Chappius, Kirkpatrick, Keller, Bellamy, and Venettozzi[4] retaliated against Plaintiff

for the ILC complaint filed at Green Haven; (2) Plaintiff's due process claims against Defendants

Venettozzi, Bellamy, Griffin, Demo, and Kirkpatrick; (3) any Equal Protection Clause claims;

(4) Plaintiff's Eighth Amendment claims; and (5) Plaintiff's state law claims. The Court

addresses each argument in turn.

As a threshold matter, the Court *sua sponte*[5] dismisses Plaintiff's claims against

Defendants Chappius, Keller, Bellamy, and Venettozzi in their official capacities. Under the

Eleventh Amendment, nonconsenting states are immune from suit in federal court, *Sanchez v.

City of New York*, 736 F. App'x 288, 290 (2d Cir. 2018), and this immunity extends beyond the

states to state agents and officials acting in their official capacities. *Kentucky v. Graham,* 473

---

[4] Defendants argue that any retaliation claims against Defendants Bellamy and Venettozzi should be dismissed, but it is unclear from the SAC whether Plaintiff intended to assert retaliation claims against those Defendants. Regardless, any retaliation claims against Defendants Bellamy and Venettozzi would also dismissed. First, Plaintiff failed to respond to Defendants' motion to dismiss the retaliation claims against those Defendants in his opposition, and therefore those claims are deemed to be abandoned. *City of Perry, Iowa v. Proctor & Gamble Co.*, 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016). Second, the facts in the SAC do not show that Defendants Bellamy or Venettozzi were aware of Plaintiff's protected activity or sufficiently establish a causal connection between the protected activity and an adverse action by those Defendants.

[5] Although Defendants did not seek dismissal of the official capacity claims raised against Defendants Chappius, Keller, Bellamy, and Venettozzi, this Court may, due to Plaintiff's IFP status, dismiss the claims *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii). *See Delano v. Rendle*, No. 13-CV-0070(NAM)(TWD), 2015 WL 1506079, at *4 (N.D.N.Y. Mar. 31, 2015).

U.S. 159, 167 – 68 (1985); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir. 2006)). Thus, Defendants, DOCCS employees,[6] are immune from suits against them in their official capacities in federal court.

## I.    Retaliation

### A.  First Amendment

As discussed in the Court's 2018 Opinion, to state a First Amendment retaliation claim that survives a motion to dismiss, a plaintiff must allege the following: (1) the plaintiff engaged in speech or conduct that was protected by the First Amendment; (2) the defendant was aware of that activity; (3) the defendant took adverse action against the plaintiff; and (4) there was a causal connection between the protected speech and the adverse action.  *Dolan v. Connolly,* 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir. 2009)).

Clearly, the filing of grievances and complaints is constitutionally protected activity. *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003); *Perkins v. Perez,* No. 17-CV-1341(KMK), 2019 WL 1244495, at *14 (S.D.N.Y. Mar. 18, 2019) (citing cases).  To qualify as an "adverse action," retaliatory conduct must be of a kind that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Zelnik v. Fashion Inst. of Tech.,* 464 F. 3d 217, 225 (2d Cir. 2006).  Causal connection can be more difficult.  It can be established indirectly, through a showing of close temporal proximity between the protected activity and the adverse employment action.  *See DeCintio v. Westchester Cty. Med. Ctr.,* 821 F.2d 111, 116 (2d Cir. 1987).  However, the Second Circuit urges caution:

> [P]risoner retaliation claims are easily fabricated, and ... pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. Accordingly, while we have held that temporal proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation, we

---

[6] The Court understands that Plaintiff also asserts claims against a John Doe, who is not a DOCCS employee.  For separate reasons, discussed in this Opinion, those claims are dismissed.

have consistently required some further evidence of retaliatory animus before permitting a prisoner to proceed to trial on a retaliation claim.

*Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013).  Regardless of whether a plaintiff attempts to establish causal connection directly or indirectly, the plaintiff must allege that the defendants were aware of the protected activity.  *Pavone v. Puglisi*, 353 F. App'x 622, 625 (2d Cir. 2009) (citing *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)).

Although Plaintiff identifies adverse actions taken against him, including his allegedly retaliatory confinement,[7] Plaintiff does not plausibly allege that Defendants Keller, Kirkpatrick, or Chappius were aware of the ILC complaint at Green Haven and, therefore, he fails to state a claim that those Defendants retaliated against him for that activity.  Based on the SAC, each of these Defendants worked at Elmira and not at Green Haven, the facility where Plaintiff was involved with the ILC complaint.  (*See* SAC ¶¶ 38, 47 & 60.)  This alone would not be fatal to a retaliation claim.  However, the SAC contains no facts suggesting that Defendants Keller, Kirkpatrick, or Chappius were aware of the complaint, and none connecting their roles in adverse actions against Plaintiff to the complaint.  At most, Plaintiff claims that Defendants Keller and Kirkpatrick "aid[ed] and abet[ed] Griffin['s] retaliation and punitive confinement." (*Id.* ¶ 55 & 60.)  This, without any facts suggesting that they subjected Plaintiff to an adverse action because of the protected activity, or that they even knew that Plaintiff had engaged in the protected activity, is insufficient to support a facially plausible First Amendment retaliation claim.

---

[7] Plaintiff also alleges that Defendant Chappius interfered with his visitation  in retaliation for the ILC complaint.  (SAC ¶¶ 101 – 02.)  Restrictions on visitation may, but do not necessarily, amount to an adverse action.  *Compare Amaker v. Annucci*, 721 F. App'x 82, 84 (2d Cir. 2018) (holding that requiring an inmate's visitors to have their photographs taken in order to shorten visitation time was not an adverse action), *with Henderson v. Fischer*, No. 12-CV-1704(TJM)(TWD), 2015 WL 1413965, at *14 (N.D.N.Y. Mar. 18, 2015) ("The Court finds for purposes of this motion that Graham's temporary revocation of Plaintiff's mother's visitation privileges constitutes adverse action for retaliation purposes.").  Here, the Court need not determine whether the alleged restrictions on visitation were an adverse action because, for reasons discussed *infra* and even assuming that the visitation inference was an adverse action, Plaintiff failed to meet the causal connection element of the retaliation analysis.

Similarly, although Plaintiff alleges that Defendant Chappius was close friends with Defendant Griffin, (*id.* ¶¶ 38 & 100) he does not indicate that Defendant Griffin told Defendant Chappius about the complaint or that Defendant Chappius otherwise knew of the protected activity.

Accordingly, Plaintiff's claims that Defendants Keller, Kirkpatrick, and Chappius retaliated against him for the Green Haven ILC complaint are dismissed for failure to state a facially plausible claim.

Plaintiff asserts a similar claim against a "John Doe," who Plaintiff alleges provided false testimony against him in retaliation for Plaintiff's "exercising his rights to file grievance, freedom of speech, & performing job duties." (*See* SAC ¶ 48.) Plaintiff does not assert how or why this unnamed Defendant, an inmate, would have been aware of Plaintiff's protected activity. Broadly, it is unclear why an inmate would want to retaliate against Plaintiff for filing grievances which presumably had no effect on the inmate. Moreover, no facts in the SAC suggest a causal connection between Plaintiff's protected activity and the inmate's false testimony. Accordingly, because Plaintiff fails to state a facially plausible claim for relief against Defendant Doe, the Court dismisses Defendant Doe from the action[8] and, like in the 2018 Opinion, declines to issue an order pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) to identify the unnamed Defendant. *Booker v. Griffin*, No. 16-CV-0072(NSR), 2018 WL 1614346, at *20 (S.D.N.Y. Mar. 31, 2018).

## B. Fourteenth Amendment

An inmate's right to file a grievance is also protected under the Fourteenth Amendment and conduct in retaliation for filing a grievance could support a § 1983 claim for violation of the

---

[8] Although Defendants did not request that the Court dismiss Defendant Doe, the Court may do so *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because Plaintiff is proceeding IFP.

Fourteenth Amendment. *Gonzalez v. City of New York*, No. 17-CV-6518(GHW), 2019 WL

1407317, at *10 (S.D.N.Y. Mar. 28, 2019). Similar to the requirements for a First Amendment

retaliation claim, to state a *prima facie* case for retaliation in violation of the Fourteenth

Amendment, a plaintiff must show that (1) he was engaged in protected activity; (2) the

defendant was aware of that activity; (3) the plaintiff suffered a materially adverse action; and

(4) there was a causal connection between the protected activity and that adverse action. *Id.*

(quoting *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014))

(internal quotation marks omitted). First and Fourteenth Amendment claims are frequently

analyzed together as they involve virtually identical elements. *See, e.g.*, *Coffman v. Alvin Cmty.*

*Coll.*, 642 F. App'x 472, 475 (5th Cir. 2016); *Gierlinger v. Town of Brant*, No. 13-CV-370, 2015

WL 269131, at *6 (W.D.N.Y. Jan. 21, 2015); *Harnett v. Barr*, 538 F. Supp. 2d 511, 523

(N.D.N.Y. 2008). Therefore, for the reasons stated *supra* Part I(A), Plaintiff's Fourteenth

Amendment retaliation claims against Defendants Doe, Kirkpatrick, Keller, and Chappius are

dismissed.

## II. Due process

As in his initial Complaint, in the SAC, Plaintiff contends that he was not afforded due

process before being subjected to indefinite administrative segregation in violation of the

Fourteenth Amendment Due Process Clause.[9]

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty,

or property, without due process of law." U.S. Const. amend. XIV. To state a procedural due

---

[9] Plaintiff asserts that the "ad-seg report" incorporated previously adjudicated convictions and misbehavior reports and that this raises both a res judicata and an issue preclusion concern. (SAC ¶ 64.) Res judicata bars claims that have either been litigated or could have been litigated from being relitigated. Issue preclusion, or collateral estoppel, bars issues that have been litigated from being re-litigated. Neither doctrine is implicated here, because Plaintiff only alleges that the "ad-seg report" referenced those prior criminal convictions and misbehavior reports. The SAC contains no facts which indicate that any hearing officer relitigated claims or issues from those matters.

process claim, Plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted). Plaintiff's prolonged administrative segregation, as the Court held in the 2018 Opinion, implicates a protected liberty interest.[10] *Booker v. Griffin*, No. 16-CV-0072(NSR), 2018 WL 1614346, at *8 (S.D.N.Y. Mar. 31, 2018). However, Defendants argue that his due process claims against Defendants Venettozzi, Bellamy, Griffin, Demo, and Kirkpatrick should be dismissed because they were either not personally involved in the alleged constitutional violations, or are protected by qualified immunity, or because Plaintiff was otherwise afforded constitutionally sufficient process.

### A. Defendant Venettozzi

Plaintiff alleges that Defendant Venettozzi violated his due process rights by implementing a policy throughout DOCCS of using administrative segregation for indefinite punitive confinement[11] and by failing to properly train Defendants Kirkpatrick and Keller in properly conduct for a hearing. (SAC ¶¶ 62 – 63 & 75.)

These conclusory allegations are insufficient, even under a liberal interpretation, to support a plausible claim that Defendant Venettozzi was personally involved in the due process violations.

---

[10] Like in the 2018 Opinion, because the Court finds that Plaintiff has a protected liberty interest based on the length of his administrative segregation, the Court does not reach the question of whether the particular conditions of Plaintiff's SHU confinement imposed any atypical and significant hardship.

[11] In Plaintiff's opposition, he states that he does not intend to reassert his claim that Defendant Venettozzi violated the Due Process Clause by affirming the results of Plaintiff's administrative segregation hearing. If Plaintiff did reassert such a claim, it would be dismissed as the Court has already determined that Defendant Venettozzi is immune from that claim. *Booker v. Griffin*, No. 16-CV-0072(NSR), 2018 WL 1614346, at *12 (S.D.N.Y. Mar. 31, 2018).

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)) (internal quotation marks omitted). Personal involvement of a defendant may include (1) direct participation by the defendant in the alleged constitutional violation; (2) after being informed of the violation, the defendant failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred; (4) the defendant allowed the continuance of such a policy or custom; (5) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (6) the defendant exhibited deliberate indifference to the rights of victim by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright*, 21 F.3d at 501) (internal citations omitted)).

Plaintiff alleges that Defendant Venettozzi "maintain[ed] a policy throughout D.O.C.C.S. of using the term ad-seg as a pretext for punitive confinement in extreme isolation units." (SAC ¶ 75.) This allegation is conclusory and therefore insufficient to establish Defendant Venettozzi's personal involvement in due process violations. *See Anderson v. Lalley*, No. 12-CV-6355(FPG), 2015 WL 6686586, at *6 (W.D.N.Y. Oct. 29, 2015). Plaintiff fails to allege facts that support or suggest that Defendant Venettozzi maintained any sort of DOCCS-wide policy or practice of this nature. The bare allegation that a defendant maintained a policy by which a plaintiff was deprived of his constitutional rights, without facts to show that the defendant maintained that policy, is not enough for personal involvement under § 1983. *Richardson v. Dep't of Corr.*, No. 10-CV-6137(SAS), 2011 WL 710617, at *3 (S.D.N.Y. Feb. 28, 2011) ("The conclusory allegations of Fischer's implementation of the Rules is insufficient to

establish his personal involvement in any allegedly unconstitutional custom or policy."); *Houghton v. Cardone*, 295 F. Supp. 2d 268, 276 (W.D.N.Y. 2003) ("All that plaintiff has done here is assert the *conclusion* that [the defendant] was personally involved, with no supporting factual allegations. That is not enough.").

Further, Plaintiff's allegation that Defendant Venettozzi failed to properly train the hearing officers,[12] without a factual connection between his alleged failure to train and Plaintiff's wrongful administrative confinement, is insufficient to establish personal involvement. *Samuels v. Fischer*, 168 F. Supp. 3d 625, 639 (S.D.N.Y. 2016) ("A general allegation that [the defendants] failed to train subordinates, however, is insufficient to establish personal involvement, absent some factual connection between their failure to train and the harm that eventually befell [the p]laintiff."). Plaintiff merely alleges that Defendant Venettozzi did not train, supervise, or monitor the hearing officers, that he "granted their erroneous requests for extensions," and that he "allowed [the hearing officers] to preside as hearing officers and render determination depriving plaintiff of liberty without the affordance of due process." (SAC ¶ 62 – 63.) These facts do not connect in any meaningful way Defendant Venettozzi's alleged failure to train the hearing officers to the result of the hearing, administrative segregation. *See Gantt v. Ferrara*, No. 15-CV-7661(KMK), 2018 WL 4636991, at *6 (S.D.N.Y. Sept. 27, 2018) (holding that the plaintiff's allegations that the supervisory defendant failed to train or supervise were conclusory because the plaintiff failed to explain how the defendant acted deliberately or with reckless disregard to the plaintiff's constitutional rights). At most, they show that Defendant

---

[12] A failure to train allegation relating to a § 1983 claim "implicates the fourth *Colon* factor, i.e., that "the defendant was grossly negligent in supervising subordinates who committed the wrongful acts" for the purposes of personal involvement. *Samuels v. Fischer*, 168 F. Supp. 3d 625, 638 (S.D.N.Y. 2016).

Venettozzi allowed the hearing officers to do their jobs, to conduct a hearing and render a determination.

### B. Defendant Bellamy

Plaintiff fails to plausibly allege that Defendant Bellamy was personally involved in violating his due process rights. Based on the face of the SAC, Defendant Bellamy is only involved in that she denied Plaintiff's grievances about his administrative confinement and she, along with Defendants Keller, Venettozzi, and Chappius, "ke[pt] plaintiff punitively confined absent a hearing or sanction." (*Id.* ¶¶ 84 – 85.) General or conclusory claims that an official denied a grievance, without more, are not sufficient to support personal involvement. *See, e.g.*, *Henry v. Lempke*, 680 F. Supp. 2d 461, 464 (W.D.N.Y. 2010); *Pugh v. Goord*, 571 F. Supp. 2d 477, 515 (S.D.N.Y. 2008); *Brooks v. Chappius*, 450 F. Supp. 2d 220, 226 (W.D.N.Y. 2006); *Graham v. Wright*, No. 01-CV-9613(NRB), 2003 WL 22126764, at *1 (S.D.N.Y. Sept. 12, 2003). Plaintiff's claim that Defendant Bellamy kept "plaintiff punitively confined" is simply a statement of the result of her denial of the grievances; it does not add any facts to Plaintiff's bare allegation that she denied his grievances.

Therefore, Plaintiff's due process claims against Defendant Bellamy are dismissed for lack of personal involvement.

### C. Defendant Kirkpatrick

Defendants argue that Plaintiff fails to state a procedural due process claim against Defendant Kirkpatrick because the hearing conducted by Defendant Kirkpatrick was incomplete; the hearing that resulted in the burden on Plaintiff's protected liberty interest was in fact conducted by Defendant Keller. The Court agrees. The SAC contains no facts which show that

Defendant Kirkpatrick was directly involved or involved as a supervisor in the decision confining Plaintiff to administrative confinement.[13]

### D. Defendants Griffin and Demo

According to Defendants, Plaintiff's due process claims against Defendants Griffin and Demo should be dismissed because those Defendants are entitled to qualified immunity. The Court agrees and for the same reasons articulated in its 2018 Opinion. In his SAC, Plaintiff's due process allegations against Defendants Griffin and Demo amounted to providing false or misleading statements against him in their segregation recommendation and in their testimonies at his administrative segregation hearings. (*See* SAC ¶¶ 45 & 48 – 49.)

As the Court held in its 2018 Opinion, in the Second Circuit, "[i]t is well-settled that a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Booker v. Griffin*, No. 16-CV-0072(NSR), 2018 WL 1614346, at *12 (S.D.N.Y. Mar. 31, 2018) (quoting *Velez v. Burge,* 483 F. App'x 626, 628 (2d Cir. 2012)) (internal quotation marks omitted). No reasonable officer would understand that creating a misleading segregation recommendation and providing false testimony would violate Plaintiff's due process rights. (*Id.*) Accordingly,

---

[13] Had the SAC established Defendant Kirkpatrick's personal involvement, there would still be no facially plausible claim that Defendant Kirkpatrick did not afford Plaintiff constitutionally sufficient process. Plaintiff alleges that because Defendant Kirkpatrick adjourned the hearing with Defendant Venettozzi's approval, certain documents Plaintiff was gathering for his defense became unavailable in the regular course of business. (SAC ¶¶ 51 – 54.) While inmates certainly have a right to present documentary evidence, *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004), this right does not entitle inmates to receive all documents they request. "Even when documents are relevant and obtainable, [p]rison officials must have the necessary discretion to keep [a prison disciplinary] hearing within reasonable limits." *Amaker v. Coombe*, No. 96-CV-1622(JGK), 2002 WL 523388, at *10 (S.D.N.Y. Mar. 29, 2002) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (internal quotation mark omitted). Any argument that Defendant Kirkpatrick violated Plaintiff's due process rights because he did not follow DOCCS and state law procedure in conducting Plaintiff's administrative segregation hearing would also fail. "Federal constitutional standards rather than state law define the requirements of procedural due process." *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir. 1990).

Plaintiff's due process claims against Defendants Griffin and Demo based on their segregation recommendation and testimonies during the administrative segregation hearings are dismissed.

## III.     Deliberate indifference to medical needs

### A.  Exhaustion

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "The PLRA's exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' " *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).  Exhausting all remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Washington v. Chaboty*, No. 09-CV-9199 (PGG), 2015 WL 1439348, at *6 (S.D.N.Y. Mar. 30, 2015) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009)) (internal quotation marks and citations omitted).  A plaintiff must invoke all available administrative mechanisms, including appeals, "through the highest level for each claim." *Varela v. Demmon*, 491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007); *Veloz v. New York*, 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004).  In New York, this includes filing grievances, appealing unfavorable decisions to the prison superintendent and then, if needed with the Central Office Review Committee ("CORC").  *Torres v. Carry*, 672 F. Supp. 2d 338, 343 (S.D.N.Y. 2009).  New York law provides that grievances should "contain a concise, specific description of the problem." *Espinal v. Goord*, 558 F.3d 119, 126 (2d Cir. 2009) (quoting N.Y. Comp. Codes R. & Regs., tit. 7, § 701.7(a)(1)(i)).

Defendants bear the burden of demonstrating that Plaintiff's claim is not exhausted. *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009). "[A] motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if 'nonexhaustion is clear from the face of the complaint.' " *Lopez v. Cipolini*, No. 14-CV-2441(KMK), 2015 WL 5732076, at *4 (S.D.N.Y. Sept. 30, 2015) (citing *Lovick v. Schriro*, No. 12–CV–7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014)) (alterations and internal quotation marks omitted). "[B]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." *Sloane v. Mazzuca*, No. 04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) (internal quotation marks omitted).

Plaintiff alleges that he filed a grievance in June 2015 "about not receiving medical treatment" and that he was told in response that because he was a Green Haven inmate and his medical chart was not at Elmira, he could not be treated. (SAC ¶ 92.) The grievance review committee recommended that Defendant Chappius provide Plaintiff with medical treatment; but he did not do so and Plaintiff's medical records were not sent to Elmira until after August 13, 2015. (*Id.*) According to Defendants, Plaintiff failed to exhaust this claim because he did not specifically claim that Defendants Chappius and Griffin deliberately failed to transfer his medical records from Green Haven. The Court disagrees and finds that, based on the face of the SAC, Plaintiff plausibly alleged that he exhausted this claim.

At the motion to dismiss stage, the Court is required to make every reasonable inference in favor of the nonmoving party. Further, because Plaintiff is *pro se*, the Court must give the SAC a liberal interpretation. Applying these principles and accepting the facts in the SAC as true, the Court finds that Plaintiff properly exhausted this claim. He filed a grievance about his

lack of medical care which satisfied the basic purposes of exhaustion, putting the prison on notice of the relevant factual circumstances giving rise to a potential claim. *Sulton v. Wright*, 265 F. Supp. 2d 292, 298 (S.D.N.Y. 2003), *abrogated on other grounds by Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003). Moreover, it is clear from the grievance committee's response that the grievance was sufficiently specific to alert the prison that Plaintiff's medical records had not been transferred. A specific allegation that Defendants Griffin and Chappius intentionally failed to transfer those medical records was not required. "[T]here does not appear to be any reason to require a prisoner to present fully developed legal and factual claims at the administrative level." *Id.* (internal quotation mark omitted).

Accordingly, because the claims were properly exhausted, the Court will consider whether they should none the less be dismissed under Rule 12(b)(6).

### B. Merits

Under the Eighth Amendment, the infliction of "cruel and unusual punishments" is prohibited. U.S. Const. amend. VIII. However, the Eighth Amendment has applications beyond the disciplinary context. It "imposes a duty on prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). In *Rhodes v. Chapman*, the Supreme Court concluded that "deliberate indifference to an inmate's medical needs is cruel and unusual punishment rested on the fact . . . that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." 452 U.S. 337, 347 (1981). To state an Eighth Amendment claim for inadequate medical care, a plaintiff must demonstrate: (1) an objectively serious medical need, which "exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain' " and (2) a subjective "deliberate indifference"

element measuring whether the prison official acted with a sufficiently culpable state of mind. *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

The Court held in its 2018 Opinion that Plaintiff's allegations (including constant pain and months of constipation due to a lack of allergy medication and loss of a tooth due to a lack of dental care) stated a sufficiently serious medical need. *Booker v. Griffin*, No. 16-CV-0072(NSR), 2018 WL 1614346, at *16 (S.D.N.Y. Mar. 31, 2018). Plaintiff's allegations in the SAC remain sufficient to meet the first element of the deliberate indifference analysis. (SAC ¶¶ 88 – 89 (alleging nose bleeds, sores and blisters as well as constipation, tooth loss, and severe backpain).)

Next, the Court must determine whether Defendants Griffin and Chappius each acted with deliberate indifference. A prison official may only be found liable if she knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 834. Simple negligence, or inadvertent failure to provide adequate medical care, even if it amounts to medical malpractice, is not enough to plausibly allege deliberate indifference to an inmate's Eighth Amendment rights. *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006).

The allegations in the SAC fail to show that either Defendant Griffin or Defendant Chappius were aware of an excessive risk to Plaintiff's health or safety. Plaintiff alleges that at one point, he told Defendant Griffin he could not sit with his hands cuffed behind his back because he had pulled his back and Defendant Griffin replied with an expletive and that he did not care about Plaintiff's back injuries. (SAC ¶ 26.) Although Defendant Griffin's response, if true, was inappropriate and callous, it does not support a facially plausible claim that he was

aware of a serious medical need relating to Plaintiff's back injury. *See Sowell v. Northrop*, 820

F. Supp. 2d 475, 476 (W.D.N.Y. 2011); *Lloyd v. Lee*, 570 F.Supp.2d 556, 569 (S.D.N.Y. 2008);

*McCoy v. Goord*, 255 F. Supp. 2d 233, 259 (S.D.N.Y. 2003). Moreover, Plaintiff does not allege

that Defendant Griffin was aware of his allergy issues or that he was suffering from dental

trouble. Plaintiff's claim against Defendant Chappius is even more sparse. Plaintiff only alleges

that he "explained his medical pains & problems" to Defendant Chappius. (SAC ¶ 91.) Nothing

in this allegation suggests that Defendant Chappius was aware of an excessive risk to Plaintiff's

health or that Defendant Chappius drew an inference from Plaintiff's description of his medical

pains that there was a substantial risk of serious harm to Plaintiff.

To the extent that Plaintiff claims Defendants Chappius and Griffin violated the Eighth

Amendment by intentionally delaying the transfer of his medical records, such a claim would

fail. Plaintiff does not plausibly allege that either of these defendants were personally involved

in the transfer of his medical records. As discussed *supra*, a defendant's personal involvement in

alleged constitutional violations and deprivations is required for an award of damages under

§ 1983. *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (quotations and citations omitted).

Plaintiff alleges that Defendants Griffin and Chappius were directly involved in transferring him

to Elmira and intentionally withholding his medical records, (SAC ¶ 38) but he does not provide

further facts to flesh out this allegation from a conclusory statement and an unfounded suspicion

to a plausible claim.

IV.     **Equal protection**

Plaintiff argues that he was singled out and that Defendants denied him rights that were

provided to other inmates in violation of the Fourteenth Amendment's Equal Protections Clause.

To state a facially plausible equal protection claim, Plaintiff must show, first, that he was

selectively treated as compared with others similarly situated and that, second, the selective treatment was based on impermissible considerations. *Booker v. Griffin*, No. 16-cv-0072(NSR), 2018 WL 1614346, at *17 (S.D.N.Y. Mar. 31, 2018) (citing *Tyk v. Surat,* 675 F. App'x 40, 42 (2d Cir. 2017) (summ. order)). A plaintiff may also establish a facially plausible Equal Protection Clause claim if she can show that she was "treated differently from similarly situated individuals in circumstances where there was no rational basis for the difference in treatment ('class of one')." *EklecCo NewCo LLC v. Town of Clarkstown*, No. 16-CV-6492(NSR), 2018 WL 3023159, at *11 (S.D.N.Y. June 18, 2018) (quoting *Artec Constr. & Dev. Corp. v. City of New York*, No. 15-CV-9494 (KPF), 2017 WL 5891817, at *3 (S.D.N.Y. Nov. 28, 2017)).

Under the class of one theory, Plaintiffs must show that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate governmental policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of mistake." *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (internal quotation marks omitted). To succed under this theory, plaintiffs must establish an "extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (internal quotation mark omitted).

In the 2018 Opinion, the Court dismissed Plaintiff's Equal Protection Clause claims because Plaintiff "does not provide even a single comparator that was subject to different treatment" and granted Plaintiff leave to replead his claim. *Booker v. Griffin*, No. 16-CV-0072(NSR), 2018 WL 1614346, at *18 (S.D.N.Y. Mar. 31, 2018). After the SAC, Plaintiff again fails to identify a similarly situated comparator, let alone an extremely similar comparator.

Plaintiff refers to an inmate Santana who was confined to administrative segregation in Elmira from 2015 to 2016, (SAC ¶ 96), but he does not allege that Santana did not receive due process before being placed in administrative segregation. Beyond both being inmates at Elmira and both being confined to administrative segregation, there are no other similarities between Plaintiff and Santana. Plaintiff's remaining allegations related to his equal protection claim are broad and fail to identify any specific similarly situated comparator.

To the extent Plaintiff attempts to allege disparate treatment, his allegations are insufficient. Plaintiff compares himself to virtually every inmate in all DOCCS facilities. He alleges that he is being treated differently than inmates who are being held in general population or inmates subjected to disciplinary confinement because he is being unlawfully held in disciplinary confinement. (*Id.* ¶ 98 – 99.) He also argues—again, without referring to any similarly situated inmate—that Defendants Griffin and Chappius did not follow proper procedure when they transferred Plaintiff to Elmira. (*Id.* ¶ 99.) Such broad allegations do nothing to identify a similarly situated comparator.

## V. State law claims

According to Defendants, Plaintiff's state law claims should be dismissed under New York Correction Law § 24. Under New York Corrections Law § 24, a plaintiff cannot assert a civil action against correctional officers and employees of DOCCS in their individual capacities "for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee." N.Y. Correct. L. § 24. New York Corrections Law § 24 precludes " 'the assertion of claims against corrections officers [in their personal capacities] in any court, including the federal courts,' by designating the New York State Court of Claims as the only available venue to bring a claim for damages

arising out the acts committed by corrections officers within the scope of their employment."

*Rucano v. Koenigsmann*, No. 12-CV-00035(MAD), 2014 WL 1292281, at *15 (N.D.N.Y. Mar. 31, 2014) (citing *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) ); *Ramos v. Artuz*, No. 00-CV-0149, 2001 WL 840131, at *6 (S.D.N.Y. July 25, 2001) (concluding that New York Corrections Law § 24 barred inmate's state law claims for negligence against DOCCS employees in their individual capacities); *Francis v. Fiacco*, No. 15-CV-00901(MAD)(ATB), 2016 WL 3448617, at *4 (N.D.N.Y. June 20, 2016) (barring pendent state claims, including state law false imprisonment claim, as precluded by New York Correction Law § 24).

If a court determines that the DOCCS employees acted within the scope of their employment, it must dismiss state law claims asserted against them in their individual capacities for lack of subject matter jurisdiction. *Colón v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 15-CV-7432(NSR), 2017 WL 4157372, at *8 (S.D.N.Y. Sept. 15, 2017). A plaintiff cannot use supplemental jurisdiction to circumvent § 24 because even when a court exercises supplemental jurisdiction over state claims, the court must apply substantive state law to those claims. *Id.* (rejecting the plaintiff's argument that the court could assert supplemental jurisdiction over his state law claims against individual DOCCS defendants); *Francis*, 2016 WL 3448617, at *4 ("Section 24 of New York Correction Law governs substantive rights; it is not procedural.").

Here, the facts in the SAC do not indicate that Defendants, all DOCCS employees, acted outside of the scope of their employment.[14] Therefore, Plaintiff's state law claims against Defendants in their individual capacities are dismissed.

---

[14] An employee acts within the scope of her employment when she performs an act for her employer, regardless of any irregularity or whether she disregarded instructions. *Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997).

**CONCLUSION**

For the foregoing reasons, Defendants' partial motion to dismiss is GRANTED. Plaintiff will not be permitted to amend his SAC because he has already twice amended his Complaint and was informed by the Court on September 17, 2018 and November 2, 2018 that no other amendments would be permitted. (ECF Nos. 103 & 111.) As there are no remaining claims against Defendants Doe, Kirkpatrick, Venettozzi, and Bellamy, they are dismissed from this case and the Clerk of the Court is respectfully directed to remove those Defendants from the caption.

The Clerk of the Court is further respectfully directed to terminate the motion at ECF No. 119. Defendants are directed to file an answer to the SAC on or before July 9, 2019. Parties are directed to confer and complete the attached case management plan and Defendant is directed to submit it to the Court on or before July 26, 2019. The Clerk of the Court is directed to mail a copy of this Opinion to *pro se* Plaintiff and file proof of service on the docket.

Dated:     June 7, 2019
       White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. Jan. 2012

-------------------------------------------------------------x

                                             **CIVIL CASE DISCOVERY PLAN**
                          Plaintiff(s),        **AND SCHEDULING ORDER**

        - against -


                          Defendant(s).        _____ CV _____ (NSR)


-------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

   a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

   b. Depositions shall proceed concurrently.

   c. Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.  Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.  Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York

_____

_____
Nelson S. Román, U.S. District Judge